J. W. BUTLER PAPER CO. et al. v. GOEMBEL.

(Circuit Court of Appeals, Seventh Circuit. October 17, 1905.)

No. 1,146.

1. BANKRUPTCY—PREFERENCE—EVIDENCE ON ISSUE OF INSOLVENCY.

In estimating the value of a bankrupt's property, consisting of a printing office plant, at a date prior to the bankruptcy when he gave a mortgage thereon to a creditor, for the purpose of determining whether he was then insolvent so as to render the mortgage voidable as a preference, it should be taken in the condition it then was as a going concern, and not at its value as mere dead property after the bankruptcy intervened.

2. SAME—GOOD FAITH OF CREDITOR.

Neither the fact that a debtor's accounts are past due, nor the fact alone of his financial embarrassment, is sufficient to impeach the good faith of a creditor in taking security so as to render the same voidable as a preference under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], where there were circumstances which tended to explain such embarrassment upon grounds other than insolvency.

3. SAME—EVIDENCE CONSIDERED.

Evidence considered and *held* insufficient to sustain the burden of proof resting on a trustee to establish the insolvency of the bankrupt at the time of giving a mortgage to a creditor, or that the creditor had reasonable cause to believe that a preference was intended, so as to render the mortgage voidable as a preference, even if insolvency were shown.

Appeal from the District Court of the United States for the Northern Division of the Northern District of Illinois.

This appeal is from an order of the District Court, which sets aside and declares void a chattel mortgage in favor of the appellants, upon certain property of H. F. Chandler, bankrupt, involved in the bankruptcy proceedings. The appellants, J. W. Butler Paper Company and American Type Founders Company, as owners of a chattel mortgage executed by the bankrupt February 9, 1904, filed their petition in the District Court to have such mortgage ad-

judicated as a lien, with direction to the trustee to turn over the property to them, or satisfy their lien for $875 and interest upon sale thereof. The petition was referred to the referee in bankruptcy, who heard the testimony and reported in favor of the appellants—substantially, that the mortgage was given to secure the bankrupt's pre-existing indebtedness to them, respectively, and when so given the appellants (mortgagees) had no reasonable cause to believe that it "was intended thereby to give a preference," and that the bankrupt was then solvent in fact. Upon the testimony and report so filed, exceptions on the part of the trustee were sustained and the report disapproved. While specific exception appears to the finding that the bankrupt was solvent when the mortgage was made, no such exception appears to the finding that the appellants were without reasonable cause to believe that a preference was thereby given, and no finding of such cause is stated in the order of the District Court or elsewhere in the record. The mortgage covered the main items of the mortgagor's printing office plant—one press and sundry articles and office supplies not being included—and the proceedings in bankruptcy were commenced May 28, 1904, so that the mortgage was executed within four months before the filing of the petition to be adjudicated a bankrupt. The material testimony relating to the transaction is referred to in the opinion.

Asa Q. Reynolds, for appellants.

H. S. Hicks, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

PER CURIAM. The validity of the appellants' mortgage is challenged only as an unlawful preference within the terms of Section 60 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]). Section 3a (2) prescribes one of the acts of bankruptcy to be, the transfer by a person, while insolvent, of "any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors." Section 60a defines such preference to consist of three elements, namely: (1) insolvency of the bankrupt when the transfer is made; (2) making within the four months period named; and (3) having the effect "to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." Thereupon section 60b further provides:

"If a bankrupt shall have given a preference and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

The issue for review arises under the last mentioned provision, but involves primarily the ascertainment of a preference in fact, as defined in section 60a, upon which liability under section 60b is predicated. Thus the only reviewable questions are: (1) Whether the fact of insolvency appears at the date of executing the mortgage; and, such fact appearing, (2) whether the appellants are chargeable with reasonable cause to believe that the preference so defined was intended thereby. Both are inquiries of fact, and the burden of proof rests on the trustee to establish both conditions.

1. The testimony as to the value of the aggregate of the bankrupt's property at the date of the mortgage is conflicting in the valuations placed upon the printing office plant by several witnesses of various degrees of competency, and seemingly upon various standards for an

estimate. In reference to other property owned and claimed by the bankrupt at such date the testimony is quite indefinite, both in items and valuation. While an equity which the bankrupt claimed in real estate owned by his wife—represented to the appellants as sufficient to "square up with every one" if negotiations pending could be carried out—seems not well founded under the testimony, other property is mentioned as owned or claimed by him, but without specifications for ascertaining the value. The referee finds from the testimony, as we understand his report, that the value of the printing plant was more than $4,000, and that the other property owned by the bankrupt was "worth from $500 to $1,000," while the aggregate indebtedness "was about the sum of $4,000," The exact amount of indebtedness stated in the testimony was $3,935, and unless this finding of the value of the plant is disapproved, as opposed to the preponderance of testimony, the bankrupt was not insolvent within the meaning of the act (section 1 [15]) when the mortgage was given. We are not satisfied that the testimony thus preponderates against the plant valuation of $4,000, either in the number of witnesses or the character of the testimony, in so far as its weight can be ascertained from the record. While six witnesses were introduced on behalf of the trustee to estimate the value, and four were examined on behalf of the appellants, two of the former and all of the latter concur in valuations of $4,000 or upwards; and the testimony of the four witnesses, who state valuations below that amount, bears upon its face no reasonable ground for overruling the referee's conclusion. The valuation for the test of solvency or insolvency under the issue must relate to the conditions, as a going concern, when the alleged preference was given, and not to the mere dead matter of the plant after bankruptcy intervened; and neither of the last mentioned witnesses on behalf of the trustee appears to have observed this rule.

2. Upon the state of proof thus appearing—with the mortgagor's property "at a fair valuation" found "sufficient in amount to pay his debts"—it goes without saying that the appellants are not chargeable with cause to believe that an unlawful preference was intended in the mortgage transaction. Were it assumed, however, that the valuations so adopted were excessive, and that a fair valuation would indicate the insufficiency of the entire property to pay the indebtedness, we are of opinion that the finding of the referee, that the appellants were without reasonable cause to believe that an unlawful preference was intended, is nevertheless well supported by the testimony; indeed, that no testimony appears which would authorize a finding against them. The following facts are in evidence, without substantial dispute: The bankrupt repeatedly stated to representatives of the appellants that litigation with his wife was the cause of his failure to pay up his indebtedness to them; that he had a large interest in the real estate held in her name which was to be sold, and out of the proceeds he would pay them; that his other indebtedness was not large and he could then "square up with everyone." He had suggested to one of them that he might, on account of his matrimonial troubles, go South, trading his plant for land there, but was persuaded to re-

main and keep up his business. It was understood by the appellants at all times, up to and including the mortgage transaction, that the value of the bankrupt's property largely exceeded the amount of his debts, and that his embarrassment and neglect in the payment of bills resulted alone from the litigation and difficulties with his wife; and their representatives were not informed of, and did not suspect, indebtedness to other parties for considerable amounts.

The good faith of these creditors in seeking and accepting security for their account is not impeached by the circumstances thus appearing. Neither the fact that the accounts are past due, nor the fact alone of financial embarrassment under the conditions stated, establishes the statutory ground for setting aside the security so received as an unlawful preference. Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971; Loveland's Law and Proceedings in Bankruptcy (2d Ed.) § 194; Collier on Bankruptcy (5th Ed.) 460; Brandenberg on Bankruptcy (3d Ed.) § 963. The bankrupt complains in his testimony that the appellants refused to furnish him supplies upon credit, after the security was given, and it is contended that such refusal is evidence of their belief in his insolvency. It appears, however, that they had required cash payments for all supplies purchased during several prior months, so that no change of policy is indicated. In any view the circumstance is of slight weight, as the extension of credit to purchasers is governed by various considerations; the solvent owner of property may well be refused credit if known to be slow pay, deceitful, litigious, or in litigation.

The order of the District Court is reversed, with direction to proceed in conformity with this opinion.