ARKANSAS NATIONAL BANK *v.* SPARKS.

Opinion delivered June 24, 1907.

1. BANKRUPTCY—WHEN PREFERENCE SET ASIDE.—Under the Bankruptcy Act of 1898, § 60, subdivision b, providing that "if a bankrupt shall have given a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall

be voidable by the trustee," a preference will not be set aside because the debtor was insolvent and intended to make a preference; it must appear that the preferred creditor had reasonable cause to believe that the debtor was insolvent and intended to make a preference. (Page 327.)

2.  SAME—PROOF OF BELIEF OF INSOLVENCY.—That a creditor had "reasonable cause" to believe that his debtor was insolvent and intended to prefer him is not shown by proof that the debtor's insolvency was notorious in the business community nor by proof that claims against the debtor were occasionally received by the creditor for collection. (Page 329.)

3.  SAME—BURDEN OF PROOF AS TO PREFERENCE.—In an action by a trustee in bankruptcy to set aside a fraudulent preference by the bankrupt, the burden is on the trustee to show that the preferred creditor knew of the debtor's insolvency or had reasonable ground to believe that a preference was being given. (Page 329.)

Appeal from Garland Chancery Court; *Alphonso Curl,* Chancellor; reversed.

*George G. Latta,* for appellant.

The bank was an innocent holder of the paper for value, and the same came to it in the regular course of business. It had no knowledge of Varnadore's insolvency, or that the conveyance to Place was not in good faith, and hence no reasonable cause to believe that a preference was intended within the Bankrupt Act.

*Murphy, Coleman & Lewis* and *Pugh & Wiley,* for appellee.

The evidence establishes that the bank was a beneficiary of the plan to protect the home creditors, with knowledge of its intent and purpose. It had knowledge or reasonable cause to believe that Varnadore was insolvent and intended to prefer it. Bankrupt Act, § 60.

McCULLOCH, J. This is a suit in equity instituted by C. C. Sparks, as trustee in bankruptcy of the estate of one I. C Varnadore, against the Arkansas National Bank to set aside the assignment of certain notes by the bankrupt to the defendant as a preference in alleged violation of the bankruptcy law. The chancery court rendered a decree in favor of the plaintiff for the cancellation of the assignment and for the recovery of the sum of $1,726.16, the amount collected by the defendant on the assigned notes. The defendant appealed.

The facts are that I. C. Varnadore was a merchant in the city of Hot Springs, and on July 28, 1898, disposed of his stock of goods to one Frank C. Place, and received in payment therefor notes of the latter, aggregating the sum of $7,500. On the following day, July 29, he assigned two of these notes, aggregating $1,850, to the defendant, the Arkansas National Bank, as additional security for his past due notes held by the bank, aggregating the sum of $1,796 with accrued interest. On November 26, 1898, involuntary bankruptcy proceedings were commenced against Varnadore in the Federal court, and on December 6, 1898, he was duly adjudged a bankrupt. Subsequently, Sparks was appointed as trustee of his estate, and then brought this suit.

Place insured the stock of merchandise in his own name, and after its destruction by fire the appellant sued him on the notes, and instituted garnishment proceedings against the insurance company, and collected on the policies the sum of $1,726.16, which was credited on the assigned notes and on the indebtedness of Varnadore to the bank.

There is a conflict in the evidence as to whether or not the conveyance and delivery of the stock of goods by Varnadore to Place was made in good faith or whether it was done merely for the purpose of accomplishing a pretended sale and obtaining notes instead of the stock of goods, which could be utilized by the vendor and placed beyond the reach of his creditors. It is unnecessary for us to determine that question, for the proof is wholly insufficient to show that appellant, or any of its officers or agents, had any knowledge that the conveyance to Place was not made in good faith; and, moreover, it is unnecessary, since we reach the conclusion that the notes executed by Place took the place of the stock of merchandise, and if Varnadore was insolvent and transferred some of them to the appellant as a means of preference, and appellant or its agents had reasonable cause to believe that the same was intended as a preference, the chancellor was right in holding that the appellant must refund the amount collected.

The question then for our determination is, whether or not there was a preference, and, if so, whether made under such circumstances as the appellant could, under the law, be required

to surrender the notes and refund the money collected in consequence of the assignment thereof.

The bankruptcy act provides that "if a bankrupt shall have given a preference and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person." Sec. 60, subdiv. b, Bankruptcy Act of Congress, 1898.

It will be observed that this statute differs slightly from the former bankrupt law (1867), in that the former made the right of the trustee to recover depend upon the fact whether or not the person receiving the preference had reasonable cause to believe that the debtor was insolvent, whereas the present statute makes it depend upon whether or not the creditor had reasonable cause to believe that preference was intended to be given. For the purposes of this case, however, this distinction is immaterial, and the same principles would control under both statutes.

In *Grant v. Natl. Bank,* 97 U. S. 80, Mr. Justice Bradley, in delivering the opinion of the court construing the bankruptcy act of 1867, said: "Some confusion exists in the cases as to the meaning of the phrase 'having reasonable cause to believe such a person is insolvent.' *Dicta* are not wanting which assume that it has the same meaning as if it had read, 'having reasonable cause to suspect such a person is insolvent.' But the two phrases are distinct in meaning and effect. It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it, and yet such relief as the act requires may be wanting."

This statement was quoted approvingly by Mr. Justice Miller in the later case of *Barbour* v. *Priest,* 103 U. S. 293. To the same effect see Collier on Bankruptcy, 459.; *Off* v. *Hakes,* 142 Fed. 346; *J. W. Butler Paper Co.* v. *Goembel,* 143 Fed. 295; In re *Eggert,* 102 Fed. 735; *Forbes* v. *Howe,* 102 Mass. 427; *Deland* v. *Miller & Cheney Bank,* 119 Ia. 368.,

In *Stucky* v. *Masonic Savings Bank,* 108 U. S. 74, Mr. Justice Miller, after referring to the case of *Grant* v. *Natl. Bank, supra,* in commenting on it said: "That case establishes the doctrine that a creditor dealing with a debtor whom he may suspect to be in failing circumstances, but of which he has no sufficient evidence, may receive payment or security without violating the bankrupt law. He may be unwilling to trust him further; he may feel anxious about his claim and have a strong desire to secure it, yet such belief as the act requires may be wanting. Obtaining additional security or receiving payment of a debt under such circumstances is not prohibited by law."

Judge Jenkins, in delivering the opinion of the court in the Eggert case, *supra,* after quoting from the above-cited decisions of the Supreme Court of the United States, said: "The resultant of all these decisions we take to be this: That the creditor is not to be charged with knowledge of his debtor's financial condition from mere non-payment of his debt, or from circumstances which give rise to mere suspicion in his mind of possible insolvent; that it is not essential that the creditor should have actual knowledge of, or belief in, his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent; that if facts and circumstances with respect to the. debtor's financial condition are brought home to him, such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such inquiry should reasonably be expected to disclose."

Now, it follows from these decisions that the question here is not merely whether the debtor was insolvent and assigned the notes by way of preference; nor is it merely whether such insolvency and intention to prefer may have been ascertained by the exercise of due diligence on the part of the preferred creditor. But the question is, whether or not the appellant, at the time it accepted the notes, had knowledge of such facts as afforded it

reasonable cause to believe that the assignment was intended to give preference. This is purely a question of fact, to be ascertained from the testimony.

It is not disputed now that Varnadore was insolvent at the time, nor that his assignment of the notes to the appellant operated as a preference. There was some testimony tending to show that his insolvency was notorious in the business community. But there is no testimony bringing this knowledge home to the appellant or its officers or agents. It is true that there is proof that claims against Varnadore were received occasionally by the bank for collection; and in some instances, after claims were not paid, they were turned over to attorneys for collection upon instructions from claimants. But, as we have already shown from the cited cases, the mere failure of a debtor to meet his obligations promptly is not always evidence of insolvency or inability to discharge his obligations. And we can not say, as a matter of law, that this fact was sufficient to put the appellant upon inquiry, or to give it reasonable cause to believe that preference was given. The evidence shows that in conferences held by various creditors, which finally led up to the conveyance of the stock of merchandise to Place, none of the officers or agents of the bank were present. The president of the bank, who accepted the assignment of the notes, testified that he knew nothing of Varnadore's insolvency, and had no reason to suspect it, and that he merely accepted the notes as collateral security because he was willing at all times to add to the strength of the securities held by the bank.

After a careful consideration of the evidence, in this case, we are convinced that the chancellor erred in reaching the conclusion that the bank accepted the notes with knowledge of the insolvency of its debtor, or that it had "reasonable cause to believe" that the notes were assigned as a means of giving it preference. The burden was upon the plaintiff to establish these facts (*Barbour* v. *Priest* and *Off* v. *Hakes, supra*), and we are of the opinion that that burden has not been discharged.

The decree is therefore reversed, and the cause is remanded with directions to dismiss the complaint for want of equity.

HILL, C. J. differs as to force of the proof.