In re CHICAGO CAR EQUIPMENT CO.

KENWOOD TRUST & SAVINGS BANK v. BUELL.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1914.)

No. 2014.

1. APPEAL AND ERROR (§ 1017*)—REVIEW—CONCLUSIVENESS OF FINDINGS.
   Where a finding by a referee in bankruptcy that a mortgagee had reasonable cause to believe that the enforcement of his mortgage would effect a preference was based on facts and circumstances stipulated in writing for submission of the issues, the rule as to the persuasive force of findings was inapplicable.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3911, 3961, 3996–4005; Dec. Dig. § 1017.*
   Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 165*)—PREFERENCES—BURDEN OF PROOF.
   Under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1506), providing that if, at the time of a transfer by a bankrupt within four months before the filing of petition, the bankrupt be insolvent, and the transfer then operate as a preference, and the person receiving it shall have reasonable cause to believe that its enforcement would effect a preference, it shall be voidable by the trustee, insolvency and reasonable cause for belief on the part of the transferee that enforcement would effect a preference must be proved as facts.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. § 165.*]

3. BANKRUPTCY (§ 165*)—VOIDABLE PREFERENCES—STATUTORY PROVISIONS.
   Such section as so amended does not make all transfers to creditors within the statutory period voidable per se whenever bankruptcy ensues and the transfer effects a preference.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. § 165.*]

4. BANKRUPTCY (§ 166*)—VOIDABLE "PREFERENCE"—STATUTORY PROVISIONS.
   A "preference," as used in such section as so amended, is one made and accepted to evade the rule provided by that act for equal distribution among the creditors of the bankrupt, and there must be a reasonable cause for belief that such preference will be effected; the preference over unsecured creditors necessarily obtained by a mortgagee not being the preference intended.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*
   For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol. 8, p. 7759.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bankruptcy proceeding against the Chicago Car Equipment Company. From an order affirming an order of the referee disallowing its claim to the proceeds of mortgaged property, the Kenwood Trust & Savings Bank appeals. Reversed, with directions.

This appeal is from an order of the District Court, sitting in bankruptcy, affirming an order of the referee in bankruptcy, whereby the claim of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

appellant, as mortgagee, to proceeds in the hands of the trustee in bankruptcy derived from sale (under stipulation) of the mortgaged property in controversy, is disallowed, except to the extent of $300, on final hearing of the issues. The mortgage referred to is in the form of a chattel mortgage, executed as the instrument of the bankrupt corporation within four months of the commencement of proceedings in bankruptcy, and embraces its entire plant consisting of chattels—specifically described and including machines, tools, lumber and other supplies "now upon the premises occupied by said mortgagor" as described—and duly recorded. It was made and received to secure an indebtedness of $5,300, whereof $5,000 was pre-existing in notes and $300 was a present advance of cash. All facts in issue for hearing below were submitted in a written "stipulation of facts," whereof the material recitals are stated in the opinion.

The conclusions of the referee (affirmed by the District Court) are thus certified in substance: (1) That the mortgage "was given to secure a past indebtedness of $5,000 and for a present consideration of $300 only." (2) "That the effect of the enforcement of such chattel mortgage" beyond the advance of $300, will enable the bank "to obtain a greater percentage of its debt than any other of such creditors of the same class." (3) That the bank and its officers "acting therein at the time of taking said chattel mortgage had reasonable cause to believe that the enforcement of such chattel mortgage would effect a preference." (4) That the bank was entitled to a lien upon the proceeds "to the extent of $300 and interest * * * and no more." (5) And the claim in excess thereof was disallowed, with leave, however, to present its proof as an unsecured claim.

Thomas M. Hoyne, John O'Connor, Harry D. Irwin, and Carl J. Appell, all of Chicago, Ill., for appellant.

Elbert C. Ferguson, of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). [1] The order of the referee, affirmed by the District Court, in effect sets aside the mortgage made by the bankrupt to secure the pre-existing indebtedness of $5,000 as an unlawful preference to the extent of such indebtedness, in derogation of the Bankruptcy Act. It is stated in the "findings" certified by the referee that the mortgagee "had reasonable cause to believe that the enforcement of such chattel mortgage would effect a preference," but such ruling rests entirely on facts and circumstances stipulated in writing for submission of the issues, so that the rule otherwise recognized in reference to the persuasive force of findings of fact by master, referee or trial court becomes inapplicable, and the ultimate fact in issue must be ascertained from the stipulated facts, including (as of course) reasonable inferences of fact therefrom.

These leading facts are expressly stated in the stipulation: The indebtedness secured by the mortgage was $5,300, of which $5,000 was pre-existing, in two loans upon notes of the mortgagor within a few months theretofore, incorporated in the new note, extending payment 60 days, together with a present loan of $300, each loan obtained "for the purpose of using the money in the business" of the mortgagor and so used. For "the purpose of procuring credit from time to time," and prior to the first-mentioned loan, a written statement of its "financial condition" was made by the mortgagor and held by the bank, showing $25,685 of assets and $1,600 of liabilities, with the mortgaged property specifically described at a valuation in excess of $16,000, aside from

lumber and other so-called "raw material"; and oral representations were made that it "was a growing concern." The president of the bank made a visit to the plant "and looked it over," before extending credit, and "found the same in a satisfactory condition"; and subsequently, when the mortgage was taken, the cashier of the bank visited the plant "to examine the same and verify the statement" made as to the amount of lumber on hand, and was satisfied therewith. At the time the mortgage was made and accepted it was not known or believed by the officials of either corporation (mortgagor or mortgagee) that the mortgagor was insolvent, but each "believed that it was solvent"; and not only did the president of the bank believe the mortgagor to be solvent, but "none of the said bank's officials believed, or had any reason to believe, otherwise, unless the facts herein stipulated were sufficient in law to charge the said bank with notice" of the mortgagor's "condition." Furthermore, "the said loans were made, and the said chattel mortgage was given by the said company and taken 6y the said bank in good faith, each believing that the said 'mortgagor' was solvent and would be able to pay all its debts." In reference to the status when bankruptcy intervened, one month after the mortgage was executed, it is stipulated "that there was no substantial change in the amount of the assets and liabilities of the mortgagor"; that the actual liabilities, inclusive of the mortgage-indebtedness, was about $11,000; that the "assets" of the bankrupt realized only $2,436.39 on public sale thereof by the trustee under order of the court. No proof of the actual value at any time, either of the mortgaged property or of assets not embraced therein, appears in the record; and the only facts which appear to bear upon the contention that the bank was chargeable with notice of any infirmity in the transactions are these stipulations: That the bank neither "procured another written statement" from the mortgagor, nor asked for one, nor asked it "to exhibit its books," nor made "any effort to examine the books of account"; and that the mortgagor "kept no books of account whatever," but the bank "did not know" such fact.

The above-mentioned finding of the referee upon the issue is neither expressed in terms as a finding of fact from the evidence submitted, nor do we infer that it can have been so intended. Treated as an issue of ultimate fact, no doubt is entertainable that these facts (as above recited) are established: That the mortgage was both given and taken "in good faith," neither in contemplation of insolvency or bankruptcy, nor with intent to give or obtain an unlawful preference; and that it was in truth received by the bank without "reasonable cause to believe that the enforcement of such" mortgage "would effect a preference" in violation of the Bankruptcy Act. This finding, therefore, can have no other force than a conclusion of law, resting on the terms of that act, that such "reasonable cause to believe" must be imputed to the bank, notwithstanding its entire good faith in the transaction so submitted. If the ruling thus adopted is untenable, we are advised of no ground on which the denial of the appellant's claim can be upheld.

While it appears from other findings of the referee (in accord with the evidence), (a) that the $5,000 amount in controversy secured by

the mortgage was a pre-existing indebtedness of the bankrupt, and (b) that enforcement thereof will enable the bank "to obtain a greater percentage of its debt than any other of such creditors of the same class," we are of opinion that these facts are without force for support of the order below, unless the amendment of section 60b of the Bankruptcy Act, adopted June 25, 1910 (36 Stat. L. 838, 842; 1 Fed. Stat. Ann. Supp. 1912, p. 739) makes one or both thereof operative per se to constitute an unlawful preference. Prior to such amendment, the rule applicable under the Bankruptcy Act as to voidability of preferences received during the prescribed period of four months was settled by decisions of the Supreme Court, in harmony with the interpretation theretofore upheld by this court and by the Circuit Courts of 'Appeals of other circuits. See Coder v. Arts, 213 U. S. 223, 240, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 446, 21 Sup. Ct. 906, 45 L. Ed. 1171; and rulings of this court in In re Eggert, 102 Fed. 735, 738, 43 C. C. A. 1; Off v. Hakes, 142 Fed. 364, 73 C. C. A. 464; J. W. Butler Paper Co. v. Goembel, 143 Fed. 295, 296, 74 C. C. A. 433. The rule thereby established was this in substance: That the terms of subdivision "b," section 60, are made controlling upon the issue of validity of the security, as between the trustee in bankruptcy and mortgagee; that the issue thus created by the provision then in force was one of fact, whether the beneficiary or his agent therein "had reasonable cause to believe that it was intended thereby to give a preference." As stated in Pirie v. Chicago Title & Trust Co., supra, subdivision "a" defines what shall constitute a preference on the part of the debtor, and subdivision "b" provides the conditions under which it "may be avoided by the trustee" as against the creditor; and "so far, so clear. If the conditions mentioned exist, the preference may be avoided. But if the person securing the preference did not have cause to believe it was intended" as a preference, "it follows that, the condition being absent, its effect will be absent," so that the debtor "may keep the property transferred to him." This doctrine is expressly reaffirmed in Coder v. Arts, supra, in reference to a mortgage which was made by the bankrupt, within four months prior to the proceedings in bankruptcy, "to secure a pre-existing unsecured indebtedness," when the mortgagor was insolvent and "knew that he was insolvent," but was received by the mortgagee without knowledge or reasonable cause to believe that the mortgagor was insolvent, or "intended thereby to give him a preference over other creditors."

[2] The above-mentioned amendment of subdivision "b" (Act of 1910) makes the conditions of liability in question read thus:

"If at the time of the transfer * * * the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it," or his agent therein, "shall then have reasonable cause to believe that enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

It is unquestionable that this provision requires proof, both of insolvency of the bankrupt at the time of the mortgage, and of "reasona£

211 F.—41

ble cause" for belief on the part of the mortgagee that enforcement thereof "would effect a preference," as conditions precedent for annulment of the mortgage; and we understand each of these requirements to present an issue of fact. We do not understand that either was so recognized in the ruling below, as no competent proof appears of insolvency in fact—as defined in section 1 (15) of the act—and the finding of "reasonable cause to believe" that the mortgage "would effect a preference" appears (as above stated) to be unsupported by the evidence, if intended or treated as purely a finding of fact. .

[3, 4] In the light, therefore, of the rule and policy adopted by the various pre-existing provisions of the Bankruptcy Act in reference to preferences, as settled by the authorities, we believe it to be unmistakable that the finding referred to must rest on this proposition: That the amendment above quoted is to be interpreted as rejecting such prior policy and creating a new definition and rule, whereby all transfers to creditors, made within the statutory period, are rendered voidable per se, whenever bankruptcy ensues and the transfer effects a preference. Were such radical departure and object contemplated by the amendment, its expression in plain terms would be free from difficulty. It would involve neither of the conditions stated therein of preexisting insolvency or reasonable cause to believe that enforcement of the transfer would effect a preference; and we believe their incorporation to be inconsistent with the purpose thus assumed and that no interpretation is authorized to eliminate either of these requirements, as issues of fact, for testing the validity of the transaction. The term "preference," as there employed, must be construed in like sense with its use throughout the Bankruptcy Act, as made and accepted to evade the rule provided by the act for equal distribution among all creditors of the bankrupt. In Coder v. Arts, supra, the distinction preserved in the various provisions of the act, between preferences on the one hand, and fraudulent conveyances (referred to in section 67e) on the other hand, is well pointed out (pages 240–242 of 213 U. S., 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008), in substance: That "an attempt to prefer is not to be confounded with an attempt to defraud, nor a preferential transfer with a fraudulent one"; that the well-recognized general or common-law right of a debtor to secure (and thus prefer) any creditor is unaffected by the Bankruptcy Act, except when the preference is given and accepted under the conditions named therein; that a preference which enables "one creditor to obtain a greater portion of the estate than others of the same class is not necessarily fraudulent"; and, when given and accepted within the statutory conditions, "the fraud is constructive or technical," as an infraction of the statutory rule and policy, while "in a fraudulent transfer" (denounced in section 67e) "the fraud is actual, as the bankrupt has secured an advantage for himself out of what in law should belong to the creditors, and not to him." The ruling thereupon is thus stated in the opinion: That while the "act strikes down preferential conveyances which come within its terms," it does not affect mere "preferential conveyances made in good faith" wherein the grantee "had no reason to believe that a preference was intended."

We are of opinion therefore that this distinction of preferences which were made voidable by the act was preserved in the amendment, so that the requirement in question, of cause for belief that enforcement of the transfer "would effect a preference," must be construed to mean a preference within such distinction, and not its effect as a preference in the general sense of that term. The fact alone that a creditor obtains security necessarily constitutes a preference over unsecured creditors, leaving no room for an issue of belief that its enforcement would so operate, and the provision referred to is strongly persuasive, if not conclusive for the reasons above stated, that such preferential effect was not within its purpose.

Several objections to the mortgage are urged in the argument—as (a) ultra vires, (b) unauthorized by the directors, (c) insufficiently executed, and (d) embracing property "consumable" in its nature—none of which appears to have been recognized below as lending support to the decree. We believe each of the objections to be untenable and they are overruled without further mention.

The order of the District Court is reversed, accordingly, with direction to proceed in reference to the appellant's claim in conformity with the foregoing opinion.