### In re WICKWIRE SPENCER STEEL CO.
No. 21880.

District Court, W. D. New York.
Oct. 14, 1935.

Larkin, Rathbone & Perry, of New York City, and Frederick, Smith, Donald & Farley (Henry E. Kelley and Franklin Benkard, both of New York City, and Malcolm McDonald, of counsel), for reorganization committee.

Abram M. Frumberg, John K. White, and David M. Palley, all of New York City, for petitioning creditors.

Jacob J. Lesser, of New York City, and Alfred F. Ritter, of Brooklyn, N. Y., for stockholders' protective committee.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y. (Thomas R. Wheeler, of Buffalo, N. Y., and S. O. Levinson, of Chicago, Ill., of counsel), for certain creditors.

KNIGHT, District Judge.

This is a proceeding for a reorganization of Wickwire Spencer Steel Company under provisions of section 77B of the Bankruptcy Act (11 USCA § 207). The petition, introductory to these proceedings, was approved by this court on July 30, 1934, and thereafter permanent trustees of such company were named.

A motion is now made by a petitioning creditor for an order adjudging the debtor insolvent and determining that the stockholders have no equity in the assets of the debtor company.

Prior to the commencement of the proceedings for a reorganization, the property of the debtor company had been in the hands of receivers appointed by this court on October 21, 1927, in an equity action instituted by the American Steamship Company against Wickwire Spencer Steel Company. Final decree in such suit was entered on August 2, 1930, and, among other things, it confirmed the report of the special master, which found that the assets of this debtor corporation, as of August 31, 1929, were of the value of $18,000,000, and that its liabilities were $26,329,815.64. The decision of the District Judge, dated August 4, 1930, American S. S. Co. v. Wickwire Spencer Steel Co. (D. C.) 42 F.(2d) 886, 891, was affirmed by the Circuit Court of Appeals, May 4, 1931, 49 F.(2d) 766.

To support the petitioner's claim that the debtor company is insolvent, the petitioner offered the record in the equity suit aforesaid. It also offered evidence to show liabilities incurred and assets of the debtor obtained since the date of such decree, together with the improvements and additions of quick assets and charges in value of current assets and investments. Based upon the aforesaid decree, the evidence shows that the liabilities of the debtor as of July 30, 1934, including interest, were $31,401,836.44, and that the value of debtor's assets based upon such decree and the aforesaid evidence was $15,846,349.58 at such date of appointment of permanent trustees. The actual debts of the debtor without interest

530

were $19,233,840.00, as computed on the basis aforesaid.

Two specific objections to a finding herein of the insolvency of debtor are made on behalf of the stockholders' committee. These objections are: (1) That the finding of insolvency in the equity suit aforesaid is not res adjudicata in this proceeding; and (2) that interest accruing on claims during the period of receivership should not be included as part of the liabilities.

The rule by which we determine whether a judgment or decree is res adjudicata as to some matter in issue in a subsequent action is clearly laid down by many text-writers and innumerable decisions of the courts. The doctrine of res adjudicata has existed in jurisprudence for ages. It was always known to the common law. It is based on the theory that the end to a trial and a final decision therein must be conclusive as to the parties thereto for all time so that property and personal rights may be stabilized. It is obvious that such a principle is unassailable.

The doctrine of res adjudicata is applicable, however, only under a certain state of facts. The judgment or decree must have been rendered by a court of competent jurisdiction, acting within its jurisdiction, and the matter in issue must be the same and must be material to the finding of the judgment or decree claimed to be res adjudicata.

"It is not denied, as a general rule, that a fact which has been directly tried, and decided by a court of competent jurisdiction, cannot be contested again between the same parties, in the same or any other court." Hopkins v. Lee, 6 Wheat. 109, 113, 5 L. Ed. 218.

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, * * * cannot be disputed in a subsequent suit between the same parties or their privies." Southern Pacific R. Co. v. United States, 168 U. S. 1, 48, 18 S. Ct. 18, 27, 42 L. Ed. 355.

"The doctrine of res judicata is that a fact which was actually in issue in a former suit, in which it was judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment so far as concerns the parties to the action and their privies." Landon v. Clark (C. C. A.) 221 F. 841, 843.

Upon this subject of the application of the rule as to the effect of a prior adjudication, attention may well be given to Baker v. Cummings, 181 U. S. 117, 21 S. Ct. 578, 45 L. Ed. 776; Nalle v. Oyster, 230 U. S. 165, 33 S. Ct. 1043, 57 L. Ed. 1439; United Shoe Machinery Corporation v. U. S., 258 U. S. 451, 459, 42 S. Ct. 363, 66 L. Ed. 708; Irving National Bank v. Law (C. C. A.) 10 F.(2d) 721, 724; Hines v. Welch, 57 App. D. C. 371, 23 F.(2d) 979, 984.

We find no difficulty in learning what the rule is. The difficulties lie in applying it. It undoubtedly is the rule that the principle of res adjudicata cannot be invoked where the determination of some fact was found in the prior suit which was not essential or material to the determination on the issue being tried. All of the cases above cited make this exception clear.

"It applies * * * to every court which has proper cognisance of the subject-matter, so far as they profess to decide the particular matter in dispute." Hopkins v. Lee, 6 Wheat. 109, 114, 5 L. Ed. 218.

"In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." Cromwell v. County of Sac, 94 U. S. 351, 353, 24 L. Ed. 195.

"It must appear, by the record of the prior suit, that the particular controversy sought to be concluded was necessarily tried and determined." Washington, etc., Packet Co. v. Sickles, 5 Wall. (72 U. S.) 580, 592, 18 L. Ed. 550.

"A prior judgment is not binding or conclusive in a subsequent action as to matters of fact or questions of law which were immaterial or unessential to the determination of the real issue in the prior action, even if put in issue, tried, and decided in such prior action." Smith v. Mosier (C. C.) 169 F. 430, 446.

In the suit in equity, it was decided that the debtor herein was then insolvent, and a value of its assets and a statement of its liabilities were set forth in the decree. The plain question for our decision is whether the finding of insolvency was a finding material and necessary to the determination of the issue on trial, or that it was a finding on an essential matter.

The American Steamship Company action against Wickwire Spencer Steel Company was brought on a creditors' bill alleging the inability of the defendant to meet its obligations as they matured, and that receivership was necessary to protect the interest of the creditors of the company. Later, the Guaranty Trust Company of New York and Chase National Bank brought actions to foreclose certain mortgages executed by the debtor, and these actions were consolidated with the receivership action. In the foreclosure suits the receivers in their answers denied the validity of mortgage liens relating to certain properties and submitted the question of priority of the mortgage liens to the court. The stockholders' committee intervened and answered attacking the validity of the trust mortgage for want of consideration, alleging conspiracy on the part of the directors of the debtor, and collusion in bringing about the appointment of receivers with the purpose of eliminating the stockholders and certain noteholders under a fictitious plan of reorganization. Any plan of reorganization must necessarily include some estimate or valuation of the assets and liabilities of the company proposed to be reorganized. A lengthy record of the proceeding before the special master is made up in a large part of details of values of the properties of the then defendant Wickwire Spencer Steel Company. A thorough appraisal of its properties was made. The master specifically found that this debtor was then insolvent. It is stated in the opinion by Judge Hazel: "The action being one to conserve the properties of an important industry with a view of reorganizing its affairs," etc. The intervening stockholders' committee excepted specifically to the findings of the master that the defendant "Wickwire Company is, and has been since October, 1927, insolvent, requiring reorganization of its capital structure." The stockholders' pro-tective committee asks leave of the District Court to give rebutting evidence as to the value of the property owned by the defendant, the debtor herein. In confirming the report of the special master and denying leave so sought, Judge Hazel said: "Inasmuch as it has been decided that the stockholders have no equity in the assets of the company, I am constrained to rule that the court cannot adjudicate the fairness of any plan of reorganization either at this time or following the sale of the properties."

In the equity suit the contention, among others, made on behalf of the stockholders' protective committee was that the reorganization of the company entered into in 1925 was brought about through the fraud of the officers and its directors. Whether there was such fraud necessarily involved inquiry as to the financial status of the company. If the company was insolvent, then there was no equity for the stockholders and they suffered no damage. The stockholders contended also at the hearing before the special master that the company was solvent, and it appeared that the basis of the alleged right to recovery was founded on this contention. It says, in other words, that the question of the solvency of the company was considered by the special master only as an argument made by him in support of his conclusions. To support this claim an excerpt from the report of the special master is quoted: "It may be conceded, as suggested by counsel for the stockholders, that value is not the determinative factor. That I am not so regarding it fully appears."

Value was not the sole determinative factor. That it was so considered by the special master is shown by the following excerpt from the report, also quoted in the brief on behalf of the stockholders' protective committee: "The complaint of the intervenors must necessarily be reduced to the ultimate claim that the Plan of Reorganization of May 29th, 1929, was one of the steps taken to effectuate the unlawful scheme and that the Reorganization Committee propose to and will acquire the assets of the company for a wholly inadequate consideration. * * * I cannot, however, perceive how the stockholders are injured if there is no equity for them in the company's assets; nor do I appreciate

why men would collude and confederate to take away from stockholders something of no value. * * * In a consideration of the alleged unlawful motives of the Officers and Directors of the company, I cannot escape the conviction that the solvency of the company is an important element."

The question of solvency was necessarily tried. Russell v. Place, 94 U. S. 606, 24 L. Ed. 214. It was actually litigated and determined. Cromwell v. County of Sac, supra. It was directly in issue, Excelsior Coal Co. v. Gildersleeve (C. C. A.) 160 F. 47, 48, and was a material and essential matter. Stannard v. Hubbell, 123 N. Y. 520, 25 N. E. 1084. It had such a relation to the issue that its determination was necessary to a decision upon the questions involved. House v. Lockwood, 137 N. Y. 259, 33 N. E. 595. The controversy did turn upon the question of solvency. Stokes v. Foote, 172 N. Y. 327, 65 N. E. 176.

It is further claimed that the finding of solvency is not res adjudicata for the reason that the parties to the previous litigation are not parties in the present litigation, and that the subject-matter in the previous litigation is not identical with the litigation here. It is claimed, for these reasons, the previous determination is not res adjudicata. If either of these is a correct statement of facts, the prior adjudication or determination is not res adjudicata. In the suit in equity the trustees for the bondholders, noteholders, and stockholders were parties. It was a proceeding in equity, which, as such, necessarily involved the rights of all parties in the present debtor company.

In this proceeding under section 77B we have as parties to it the bondholders, the noteholders, and the stockholders, all of whom were parties in the receivership action. The suit in equity on the complaint, as made, necessarily involved all parties interested in the defendant Wickwire Spencer Steel Company. The pending proceeding likewise involves the same interests. While it is true that the equity action was not brought for a reorganization of the Wickwire Spencer Steel Company, the subject-matter, that is, the insolvency of the corporation, was a material issue; that same subject-matter is the basis for this proceeding. It

is true that the operation of the rule res adjudicata must be mutual as to the party litigants. Nelson v. Brown, 144 N. Y. 384, 385, 39 N. E. 355. It is true that the rule does not apply as against one who is not in a legal sense a party to the prior proceeding. Meltzer v. Doll, 91 N. Y. 365. It is true that a question cannot be held to have been adjudicated before the issue on the subject could have arisen. Third National Bank of Louisville v. Stone, 174 U. S. 432, 19 S. Ct. 759, 43 L. Ed. 1035. These cases cited by the stockholders' protective committee, as I read them, do not conflict with the rule as to res adjudicata as heretofore stated, and the facts presented did not parallel those presented here. It is urged that neither the report of the special master nor the opinions of the courts in the equity suit determine the material issues decided. It is quite true that the reasons given for conclusions, not made parts of the adjudication, do not work an estoppel of res adjudicata, Landon v. Public Utilities Commission (D. C.) 234 F. 152; that the findings as to facts are necessary to the adjudication does not make the prior judgment res adjudicata; but an adjudication, as here, that the corporation was insolvent provided insolvency was a material part of the issue tried must be res adjudicata; were such not the fact, the doctrine of res adjudicata must fall. The judgment following the trial adjudicates the rights of the parties. It seems to me that the report of the special master and the opinions of the courts do this. To determine whether the issue was a material and a necessary one, it may be necessary, as here, to have the whole record examined. Such examination does disclose that the judgment rendered was based, in part at least, upon the finding of insolvency supported by the record in the case.

The stockholders' protective committee contends that the books of account and records of the debtor, as well as the official reports of the receivers, rebut the presumption, if any, that arose from the special master's finding as to the values of the debtor's properties. I think that the findings in these respects cannot now be challenged. The special master's report has been confirmed by the courts. No appeal now lies from such confirmation. This court is precluded by the decisions in the equity suit, with reference

to the method of keeping the books and the computations then made, since no evidence has been given in these proceedings to contradict the evidence with respect to these matters given in the receivership proceeding.

In the case of New York & Richmond Gas Co. v. Prendergast (D. C.) 10 F.(2d) 167, 208, which seems to be in point, the action was brought to have declared unconstitutional certain rate fixing legislation on the ground that it was confiscatory. Evidence of the value of the plaintiff's assets was introduced by both parties. In a prior action between the same parties in the state court, the value of these assets had been determined. The court points out that the same issue was presented in both cases, and the parties were the same. The court states, in part: "A fair valuation was arrived at in the proceeding before the state Supreme Court as of the date therein fixed. This issue of fact presented in the prior litigation having been tried and determined, parties to such trial are estopped, even in the second suit and in a different cause of action, where the same question is presented from contending to the contrary, and from what was thus found and determined."

█ Even were we to say that the insolvency of the debtor was not res adjudicata, still it seems to me that the decision in the prior suits raises the presumption of insolvency, and that such decision is competent to be received in this proceeding. Assuming that such a presumption is raised, it has not been overcome by any evidence offered on behalf of the stockholders' committee. The only evidence offered by the stockholders' committee on this question was given by one who had never made an appraisal of the debtor's properties, and his estimates were entirely based upon the records of the business of the company. His valuation of the company was based upon what he estimated to be the future earning capacity of the company. He testified that the earning capacity of the company in the amount of $20,000,000 a year is warranted from the record of the debtor. He predicted that within a period of five years sales would amount to $20,000,000 a year; that the profits would amount to $1,500,000 net after depreciation; from these estimates he states that the value of the company would be $20,000,000 in five years. In the first place, we are concerned with the present value. We have a right to look at the present earnings to estimate the future profits, but I do not see how we can definitely fix the valuation of the business as of five years in the future. We see the volume of business, plant efficiency, business organization, capital structure, and industrial conditions as elements principally affecting earning power. It must be conceded that the earning power of the corporation is the proper criterion as to its value. It appears from the testimony of one of the trustees that the average profit over a period of eleven years amounted to $750,000. Capitalized at 7 per cent., the value as of a going concern would be about $10,000,000; capitalized at 10 per cent., it would be $7,500,000. That in the making of certain capital expenditures it is estimated the annual earnings could be built up to $1,000,000; and on the basis of earnings the value of the plant itself would be something upwards of $10,000,000. The basis of the expert witness for the stockholders' committee is founded on the fact that the earnings heretofore are not a proper basis for valuation because of the litigation with the company that has been involved, and also because of the increases in income due to improved financial conditions. At no time in the history of this company has it earned $1,000,000 a year. The evidence does not sustain the valuation of $20,000,000 based upon its earnings. Evidence of this nature is not sufficient to overcome the proof of value based upon the findings in the receivership suit and the valuation subsequently made.

█ The solvency of the debtor is determined in the pending proceeding on the basis of the fair valuation of the assets of the debtor as a going concern. Bucyrus Road Mach. Co. v. Edsinger et al. (C. C. A.) 10 F.(2d) 333; J. W. Butler Paper Co. v. Goembel (C. C. A.) 143 F. 295.

█ The petition includes as part of the liabilities of the debtor an item of $11,000,000, which is interest accrued on various claims against the debtor since the inception of the receivership in 1927. It is the contention of the stockholders' protective committee that none of such interest is properly included as a part of the liabilities in determining the question of solvency. The counsel for the stock-

holders' protective committee bases his contention on the fact that, when property passes into the hands of receivers, interest cannot be allowed after the date of the appointment of the receiver. It is urged that the same rule is applicable to this proceeding. It is a settled law that interest does not run during a receivership. It was said in American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U. S. 261, 34 S. Ct. 502, 504, 58 L. Ed. 949: "And it is true, as held in Tredegar Co. v. Seaboard Ry., 105 C. C. A. 501, 183 F. [289] 290, that as a general rule, after property of an insolvent is in custodia legis interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property."

This does not mean that the interest is lost to claimant after the appointment of receivers. Payment is merely postponed. It was said in American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., supra: "But that is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full."

There was no termination of the receivership. Proceedings herein are brought under the bankruptcy law, and to that we must look to determine whether this interest is a debt or liability of the debtor. Under provisions of 77B of the Bankruptcy Act (11 USCA § 207), solvency or insolvency is determinable as of the date of the approval of the petition. At that date interest on claims against the debtor are accumulated to the total of $11,000,000. There is no specific provision in 77B which excludes or includes such interest as a part of the liabilities. However, we have the general provision in 77B subds. (k) and (o), 11 USCA § 207 (k, o) which provide that the general provisions of the Bankruptcy Act, not inconsistent with provisions of 77B, apply to the proceedings such as these, and that the rights and liabilities of the creditors with respect to the debtor and its property are the same as though a voluntary petition of adjudication in bankruptcy had been filed. Section 77B contains no definition of an insolvent. We look to section 1 of the Bankruptcy Act (11 USCA § 1) for a definition. That section, among other things, provides: "a person shall be deemed insolvent within the provisions of this act [title] whenever the aggregate of his property, * * * shall not, at a fair valuation, be sufficient in amount to pay his debts." A debt is defined in the same section as "any debt, demand, or claim provable in bankruptcy." A "debt" provable in bankruptcy is defined in section 63 of the Bankruptcy Act (USCA title 11, § 103) as "a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date." This section clearly recognizes interest as a part of the debt. This proceeding is entirely disassociated from the receivership action.

It would seem clear, therefore, that under the provisions of the Bankruptcy Act the interest on these claims or debts is to be included as a liability in determining the question of insolvency. The principle, that payment of interest is suspended only during receivership, and the further principle, that even under receivership interest is allowed where the estate is sufficient to meet the claims with interest, are well established by the decisions of the courts. In American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., supra, it was said that the rule that suspends the payment of interest during receivership does not prevent the running of interest during receivership and making it payable in case the estate proves sufficient to meet principal and interest. See, also, Central Iron & Steel Co. v. United States (Ct. Cl.) 4 F. Supp. 113. It is the contention of the stockholders' protective committee that the debtor is solvent. In that case the interest would be payable as a liability. It seems inconsistent for the stockholders' protective committee to argue the interest accrued during receivership is not at present an obligatory debt unless they admit at present the debtor is insolvent.

The rule that interest is not to be included in a claim in a receivership proceeding is applicable only in case of an insolvent state. If the estate for distribution exceeds the amount of the principal and interest on claims due at the time of the appointment of the receiver,

the excess or surplus is applicable to the payment of interest which has accrued during the receivership. The reason for the rule deferring payment of interest is apparent. Claims bearing interest at unequal rates would receive unequal proportion on account of the difference in rates, where the company was insolvent. Since such an inequality would result from operation of law rather than by agreement of parties, interest is suspended. Where, however, there is a surplus after payment of principal the parties are rightly entitled to their shares in the interest fixed by the agreement which was the basis of the liability.

"But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt." American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., supra.

Withholding of interest is wholly dependent on whether or not any surplus exists after payment of principal, and until that time the right to interest is merely suspended. Central Iron & Steel Co. v. United States, supra. In this instance, without any settlement of any claims in the receivership suit, this proceeding was commenced, and the rights of the parties are made subject to the Bankruptcy Act under which interest became a "debt" when the petition herein was filed.

Again, there is another rule of law which establishes this interest as a "debt." Even were it said to be insolvent as regards ability to pay all claims, if the claims are of different rank as to priority, the senior class is entitled to be paid in full before the payment of any junior claim. This other rule, or exception to the general rule as to interest during receivership, is clearly recognized in American Iron & Steel Co. v. Seaboard Air Line Ry., supra, wherein it is said: "The principle is not limited to cases of technical bankruptcy, where the assets ultimately prove sufficient to pay all debts in full, but principal as well as interest, accruing during a receivership,

is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full."

To the same effect is Central Trust Co. v. Condon (C. C. A.) 67 F. 84. All of the above-cited cases recognize the interest as an obligation continuing through the receivership with payment contingent on certain conditions, and, as heretofore stated, the Bankruptcy Act fixes the interest as a "debt," and makes no provision even for suspension of payment.

It is my conclusion, therefore, that the interest on the bonds to the date of the approval of the petition in this proceeding is a liability of the debtor to be included with the other liabilities as a part of the total of $31,401,836.-44.

I find that the debtor was insolvent July 30, 1934, the date when the petition herein was approved by the court.