## UTAH CONST. CO. v. SALMON RIVER CANAL CO., Limited.*

### No. 8011.

Circuit Court of Appeals, Ninth Circuit.

Sept. 22, 1936.

*Rehearing denied 86 F.(2d) 326.

Edwin Snow, of Boise, Idaho, and A. E. Bowen, of Salt Lake City, Utah, for appellant.

Frank L. Stephan and J. H. Blandford, both of Twin Falls, Idaho, and Richards & Haga, of Boise, Idaho, for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

On March 24, 1916, the District Court entered a decree determining the rights of appellee and the Twin Falls Salmon River Land & Water Company, hereinafter called plaintiffs, and the Vineyard Land & Stock Company, hereinafter called defendant, in the waters of Salmon river, sometimes called Salmon creek, and its tributaries. The decree was affirmed by this court on August 6, 1917. Vineyard Land & Stock Co. v. Twin Falls Salmon River Land & Water Co., 245 F. 9. Thereafter appellee acquired the rights of its coplaintiff, and appellant acquired the rights of defendant. On March 1, 1935, the District Court made an order prescribing rules for the administration and enforcement of the decree. This appeal is from that order.

The decree of March 24, 1916, adjudges and declares that defendant has a right, prior and superior to any right of plaintiffs, to divert and use annually on certain lands, some of which are in Idaho and some in Nevada, 12,500 acre feet of water, which "shall be diverted from the channel of Salmon river or Salmon creek and its tributaries through ditches, canals, or other conduits provided with suitable measuring devices for measuring the amount of water diverted from the channel of such stream"; that, subject to said prior right of defendant, plaintiffs have the right to divert and use on certain lands, all of which are in Idaho, 3,000 cubic feet per second of the waters of Salmon river and its tributaries, to be diverted from Salmon river at the outlet of plaintiffs' reservoir, at or immediately above the Salmon River Dam, provided that such diversion for any one irrigating season shall not exceed 235,000 acre feet, "the same to be measured at said point of diversion"; and that, subject to said right of plaintiffs, defendant has, in addition to its prior right mentioned above, the further right to divert and use annually on certain lands in Nevada 12,000 acre feet of water, to be diverted from Salmon river by means of the High Line or Harrell Canal.

The decree enjoins each of the parties "from using or diverting from the channel of the stream any of the waters of said Salmon river or Salmon creek, or its tributaries, in excess of its several rights as the same are hereinbefore defined, and from diverting or using the water at such time or in such manner or in such amount as will infringe upon any right of the other party, as such right is hereinbefore defined."

The decree provides: "That the plaintiffs install a suitable and efficient automatic measuring and registering device at their point of diversion, and that the defendant install uniform measuring devices at the several points where it diverts water from the channel of said Salmon river or Salmon creek and of any of its tributaries; all such devices to be of such design as to automatically register the amount of water diverted. All such measuring devices and gauges shall at all times be subject to the inspection of either party, and no dam or other obstruction to the natural flow of the stream shall be maintained so as to divert water from the channel of the stream, except through ditches, canals or other works provided with such measuring devices, and each of the parties hereto is perpetually enjoined from diverting from the channel of the stream or its tributaries, any water through any ditch, conduit, or other device not provided with such measuring device."

The decree concludes with the statement: "That the court retains jurisdiction to make all reasonable rules touching the manner of diverting, measuring and distributing the water, and the devices to be installed and used for such purposes where it may be impracticable to fully comply with the terms of the decree, and to direct that the parties keep accurate and detailed records of the amounts of water diverted, and to require reports to be filed from time to time of the amount so diverted, and generally to make such orders as may be found reasonably necessary to give effect to the decree, and to appoint commissioners or water masters to make distribution in accordance with its terms, and to punish the parties hereto, their officers, agents and employees, and their grantees and successors in interest, for any violation of the provisions thereof."

The order of March 1, 1935, prescribes rules for the administration and

enforcement of the decree and thereby determines substantial rights of the parties. Such an order is a "final decision," within the meaning of section 128 of the Judicial Code (28 U.S.C.A. § 225), and is therefore appealable. Re Farmers' Loan & Trust Company, 129 U.S. 206, 213, 9 S.Ct. 265, 32 L.Ed. 656; Chicago D. & Vincennes R. Co. v. Fosdick, 106 U.S. 47, 83, 27 L.Ed. 47; Blossom v. Milwaukee & Chicago R. Co., 1 Wall. 655, 657, 17 L. Ed. 673.

The order reads: " . . . It is hereby ordered, that in order to properly administer the decree in accordance with the decreed rights of the parties, the following rules are necessary and that the said rules hereinafter set forth be, and they hereby are adopted and promulgated for the guidance of those directed to administer the decree filed in this cause on March 24, 1916, to-wit: . . ." The order sets forth nine rules. Appellant challenges the validity of all except rules 1 and 6.

Rule 2 reads: "The two main channels of Salmon River [between certain points] and the two main channels of Shoshone Creek [1] [between certain points] at all times shall remain open and if used by defendant in diverting water from these channels, the water is to be measured."

The decree does not hold, nor does it assume, as this rule does, that Salmon river or Shoshone creek has more than one channel. The decree says nothing about "main channels." It speaks only of "the channel." It does not require or provide that the channel of Salmon river or of Shoshone creek shall remain open. On the contrary, it adjudges and declares that defendant, appellant's predecessor in interest, has the right to divert water from the channel of Salmon river and its tributaries. The only restrictions or limitations on this right are: (1) That such water shall not be diverted except through ditches, canals, or other conduits provided with automatic measuring devices for measuring the amount of water so diverted; and (2) that defendant shall not use or divert water in excess of its rights, as defined in the decree, or at such time or in such manner or in such amount as will infringe upon plaintiffs' rights, as defined in the decree.

■■ Under the decree, appellant, as defendant's successor in interest, has the right to construct and maintain, in the channel of Salmon river or of Shoshone creek, between the points mentioned in the rule, or elsewhere, such dams or diversion works as it may deem necessary for the diversion of water from such channel, subject only to the limitations aforesaid. To that extent, and within those limitations, appellant has the right to obstruct or close the channel of Salmon river or of Shoshone creek. Thus, in requiring these channels to remain open at all times, the rule violates a right established by the decree. The decree is conclusive on the parties, and the rights thereby established are not subject to further inquiry. Baker v. Cummings, 181 U. S. 117, 124, 21 S.Ct. 578, 45 L.Ed. 776; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355. Being inconsistent with the decree, rule 2 is invalid.

■ Rule 3 reads: "Where it is necessary in the irrigation of defendant's lands or in the use of its decreed water, for it to construct and maintain dams, dikes or other artificial means in any well defined water course, slough or natural water course to raise its decreed water to such a level as to divert its decreed water upon its lands such dams, dikes or other artificial means shall be so constructed and maintained in such manner and at such a height as to allow whatever flood water flowing from Salmon River or its tributaries that commingles with defendant's decreed water to flow in and down such well defined water course, slough or natural water course if such flood water will return to Salmon River or its tributaries."

The phrase "decreed water" is meaningless. A court decree may determine water rights, but water itself is not and cannot be "decreed."

The decree says nothing about the construction or maintenance of "dams, dikes or other artificial means" in any slough or water course other than the channel of Salmon river and its tributaries. It does not prescribe the manner of construction or limit the height of such "dams, dikes or other artificial means." In attempting so to do, rule 3 goes beyond the decree.

This rule is apparently based on the assumption that appellant is prohibited by the decree from using any flood water of Salmon river or its tributaries. The decree contains no such prohibition. Appellant's right to the use of such flood water is subject, of course, to the limita-

---

[1] Shoshone creek is a tributary of Salmon river.

tions hereinbefore stated. One of these limitations is that water shall not be diverted from the channel of Salmon river or from the channel of any tributary thereof —by flooding or otherwise—except through ditches, canals, or conduits provided with automatic measuring devices. A flood or overflow caused by a dam or other obstruction placed in the channel or by any artificial means, such as cutting or lowering the banks of the stream or narrowing the channel thereof, would be a "diversion," within the meaning of the decree.

In times of natural flood or overflow, not caused or brought about by any act of appellant, flood water of Salmon river or its tributaries which has not been and could not have been measured may come upon and cover appellant's land or some part thereof. Appellee seems to think it is appellant's duty to repel such flood water and to speed its departure by opening its (appellant's) irrigation ditches and removing all dams, dikes, or other structures which may impede or delay the return of such flood water to the river or its tributaries. Appellant has no such duty. Although, under the decree, appellant has no right to the use of any unmeasured flood water, it is not and cannot be required to exclude such water from its land or to provide facilities for its exit therefrom. It certainly cannot be required to alter, demolish or discontinue the use of dams, dikes, ditches, or other irrigation works, the maintenance of which is necessary to enable it to use water which it is entitled to use, and which it has diverted and measured in accordance with the decree. The presence of such unmeasured flood water on appellant's land may or may not benefit appellant. Such benefit, if any, is incidental, and does not constitute a "use" of such water, within the meaning of the decree.

Being inconsistent with the decree, rule 3 is invalid.

■ Rule 4 reads: "If any water of Salmon River or its tributaries that does not constitute defendant's decreed rights has been used for flooding or irrigating defendant's lands returns to or is collected in any natural water channel or slough, or well defined water course that will return the water to the river or its tributaries and which water, if unobstructed, will flow back into Salmon River, or any tributary thereof and defendant again diverts such water by artificial means from such natural channel or slough or well defined water course in a manner other than as stated in Rule 3 hereof, such second and subsequent diversion shall be in the manner provided for in Rule 3 hereof."

The phrase "any water of Salmon River or its tributaries that does not constitute defendant's decreed rights" is meaningless. No water does or can "constitute" defendant's or any one else's "decreed rights." The phrase "again diverts such water" is meaningless, because no previous diversion has been mentioned or referred to. The provision that "such second or subsequent diversion shall be in the manner provided for in Rule 3 hereof" is meaningless and impossible of application, (1) because no previous diversion has been mentioned or referred to, and (2) because rule 3 does not "provide for," specify or describe the "manner" in which any diversion shall be made. Rule 4 is for these reasons invalid.

Rule 5 reads: "The defendant may not, by ditches, dams, checks or other artificial obstructions constructed by it or its predecessors in interest, on out of bounds areas, obstruct or impede the flow of unmeasured water into Salmon River or its tributaries, if such water in the first instance flows from the river or its channels or its tributaries and does not constitute defendant's decreed rights, and no such water should be diverted on or distributed, wasted or spread over out of bounds areas."

The phrases "out of bounds areas," "unmeasured water," and "decreed rights" are undefined and meaningless. This rule is unintelligible and, therefore, invalid.

■ Rule 7 reads: "The making of openings in the banks of Salmon River or its tributaries, or any of the sloughs or channels above mentioned, where the lowering of such banks will cause premature flooding, is prohibited by the decree."

The decree does not, in fact, prohibit such "openings." It permits them, subject to the limitations hereinbefore stated. One of these limitations is that water shall not be diverted from the channel of Salmon river or from the channel of any tributary thereof—by flooding or otherwise—except through ditches, canals or conduits provided with automatic measuring devices. Flooding caused by opening or lowering the banks of the stream would be a "diversion," within the meaning of the decree. The decree places no limitation or restriction on appellant's right to open or lower the banks of sloughs or channels other

than the channel of Salmon river and its tributaries. Being inconsistent with the decree, rule 7 is invalid.

Rule 8 reads: "Any action by the defendant that causes the silting or filling up of Salmon River or its tributaries or of any natural or well defined water course, where its waters flow into Salmon River or its tributaries to an extent that materially reduces the capacity of such courses or retards the flow of water through the same, or causes any such stream or water course to prematurely overflow upon defendant's lands at places where such overflow cannot be measured, would be within the prohibition of the decree, and where any channel of Salmon River or its tributaries or such water course, has been artificially changed by the defendant it should provide adequate channel capacity to carry the water which normally passes through the channel above and below such artificial channel."

The decree says nothing about "silting or filling up" Salmon river or its tributaries or any other stream or water course. The decree does not and could not prohibit the cultivation or other lawful use of appellant's land. Such cultivation and use may result in "silting" or "filling up" Salmon river and its tributaries to some extent. Such incidental "silting" or "filling up" is not prohibited by the decree. The decree says nothing about "overflows." It does, however, prohibit the diversion of any water from the channel of Salmon river or from the channel of any tributary thereof, except through ditches, canals, or conduits provided with automatic measuring devices. An artificially-caused overflow would be a diversion, within the meaning of the decree. The decree does not prohibit diversions, by overflow or otherwise, from water courses other than the channel of Salmon river and its tributaries.

The concluding provision of rule 8, relative to channel changes and channel capacity, so far as it applies to water courses other than Salmon river and its tributaries, is outside the scope of the decree and, therefore, improper. As applied to Salmon river and its tributaries, this provision is ambiguous and of doubtful meaning. If it means that appellant shall not, by changing the channel or diminishing its capacity, divert water therefrom, except

through ditches, canals, or other works provided with automatic measuring devices, the provision is unnecessary, since the decree itself prohibits such diversions. If it is intended thereby to impose some other or further restriction on appellant's use of the channel, the rule is inconsistent with the decree. It must, for all these reasons, be held invalid.

[8] Rule 9 reads: "The decree does not prohibit the defendant from deflecting or diverting from its natural course any water flowing from the river or its tributaries that may cause damage to defendant's land by erosion or washouts, but in so diverting such water it must be permitted to flow in its well defined channels or natural water course where it will reunite with the stream of the river in the manner provided for in rule number 3."

The decree says nothing about "deflecting or diverting" water from any "natural course" other than the channel of Salmon river and its tributaries. It does not prohibit such deflections or diversions, nor does it require defendant to permit water which has been so deflected or diverted "to flow in its well defined channels or natural water course where it will reunite with the stream of the river." In so requiring, rule 9 goes beyond the decree and is invalid.

Order reversed and case remanded for further proceedings consistent with this opinion.

GARRECHT, Circuit Judge (dissenting).

The lower court should be affirmed.

Grant that the rules as formulated by the court for the guidance of those directed to administer the decree could be expressed with greater precision or in more exact legal terms, still I have no doubt that one charged with the duty of administration can take the decree and these rules and apply them in such manner that the respective parties will have the use and enjoyment of their respective water rights.

Should any question or conflict as to the meaning or intendment of any rule arise, the court on application may clarify them, jurisdiction having been retained for that purpose.