## BAKER *v.* CUMMINGS.

CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 207. Argued March 19, 20, 1901. — Decided April 15, 1901.

The question in this case involves the construction and effect of the decision of this court in the case of *Baker* v. *Cummings*, 169 U. S. 189, between the same parties, and growing out of the same transaction which is the subject of the litigation in this case.

Matters which have been fully investigated between the parties and determined by the court, shall not be again contested, and the judgment of the court upon matters thus determined shall be conclusive on the parties, and never subject to further inquiry.

This doctrine applies to this case.

THE petitioner (plaintiff below) commenced this action at law in the Supreme Court of the District of Columbia on December 19, 1889, to recover from the defendant the sum of $2712.81 with interest at six per centum from July 31, 1889, and annexed to his declaration a bill of particulars of his demand. Plaintiff claimed in his declaration that the money was due, among other things, on an account stated between the parties. The plaintiff obtained judgment in the trial court for the amount of his claim, which was reversed by the Court of Appeals of the District.

A case between the same parties and growing out of the same transaction has already been before this court and decided. 169 U. S. 189. The question in this case involves the construction

and effect of that decision, and therefore a writ of certiorari was applied for and granted, and the case brought here.

Soon after the commencement of this action and before pleading to the declaration filed therein, Cummings, the defendant, commenced a suit on the equity side of the Supreme Court of the District against Baker for the purpose of enjoining him from the further prosecution of this action, and to obtain a full and complete accounting under the order and direction of the court between complainant and Baker in respect to the partnership dealings alleged and set up in the bill, and he prayed that the defendant should be decreed to pay to him the amount which should be found due him and for other relief. In his bill the complainant alleged the formation of a copartnership on January 1, 1876, between the parties, to prosecute the practice of the law in the city of Washington, terminable by mutual consent, each to share equally in all the profits and losses of the business, and it was averred that the partnership continued until September 1, 1889, when it was dissolved. It was then alleged that the terms of the dissolution were agreed upon through false and fraudulent representations of Baker as to the condition of the partnership affairs in relation to what were called "the inspector cases," made to the complainant, with the facts in regard to which the defendant was, as the complainant alleged, much more familiar than the complainant, and that, based upon the misrepresentations, terms of agreement for dissolution were arrived at, and in carrying out the same the complainant assigned by a written assignment his claims under the partnership to all moneys then due or that might thereafter become due arising from those cases, and as consideration therefor the complainant received from the defendant the sum of $15,000 ; that instead of the amount stated by the defendant to be due the partnership in relation to the cases mentioned, a very much larger amount was due, and instead of there being only a certain named amount of claims in cases where no Congressional appropriation had been made, as stated by the defendant, a very much larger amount existed to his knowledge, of which the complainant was ignorant, and upon the faith of these untrue and fraudulent statements the com-

plainant assigned by a written assignment all his interest in the cases for a sum largely below the amount actually belonging to him under the terms of the partnership.

The complainant then alleged the commencement of an action at law by Baker against him to recover $2712.81, and stated that appended to the declaration in that action was a bill of particulars of Baker's claim, and that all of the items in that bill of particulars originated in and grew out of the partnership dealings of the parties and not otherwise, and that only by a full, proper and complete accounting and discovery, under the order and direction of a court of equity, could a proper adjustment be had of the rights of the complainant and defendant growing out of their partnership dealings.

Complainant further alleged that the action at law was not yet at issue, but that the time for pleading thereto had nearly approached, and that the complainant could not, under the rules at law, incorporate in his plea the equitable defences herein set forth, and which in a court of equity would avail against Baker's demand, and especially that the equitable right of the complainant to have discovery in the premises and to have the said assignment cancelled and held for naught was not cognizable by a court of law, and that if the defendant (Baker) were therefore permitted to prosecute his action at law against the complainant, the latter would be deprived of his defences to that suit which were set up in the bill, and the complainant therefore alleged that he was entitled to have the defendant enjoined from prosecuting his action at law, and to have the court order and direct a full and complete accounting between the complainant and defendant in respect to their partnership dealings. An order was thereupon issued restraining the further prosecution of this action, which order was subsequently and about February 1, 1892, dissolved.

To this bill the defendant Baker filed an answer February 10, 1890, denying all allegations of fraud in the settlement between the parties or in the procuring of the assignment, and also alleging that he furnished the complainant with all needed data, and all the data and information which existed in connection with the facts within his control, and that the settlement was

made with full knowledge of all the facts on the part of the complainant, and that after such settlement was made he left in the possession of the complainant papers and accounts plainly showing the whole transaction and all the facts in regard to the case, an examination of which would give all necessary information about the partnership affairs. He also alleged that the complainant was endeavoring, after a lapse of more than three years and with a full knowledge of all the facts, to attack this settlement as void, and he alleged that the claim made by the complainant was old and stale, and he pleaded the statute of limitations in his behalf, and alleged that the claim did not accrue nor was any demand made to show whether error or otherwise were made within the period of three years.

After the injunction restraining the further prosecution of this action had been dissolved, and on February 10, 1892, the defendant filed a plea to the declaration herein, in which he denied, (1) that he was indebted to the plaintiff; (2) he alleged that he never promised as set up in the declaration; (3) that the plaintiff's cause of action did not accrue within three years; (4 and 5) a set-off of $35,873.35. This set-off was alleged to have arisen out of the dealings between the parties in the part--nership already mentioned.

The plaintiff Baker joined issue upon the plea on August 24, 1892. Further proceedings in this action were delayed by mutual consent until the trial of the suit in equity. Upon that trial the complainant obtained a decree for thirty-odd thousand dollars, after deducting the amount claimed to be due the plaintiff in this action. That decree was affirmed by the Court of Appeals of the District, and the case was taken by appeal to this court, where the decrees of the courts below were reversed and the case remanded with instructions to the Supreme Court to dismiss the bill. The dismissal was general, and not " without prejudice" or any similar expression. 169 U. S. 189. After the entry of the decree dismissing the bill on the mandate of this court in the equity suit, Baker, the plaintiff herein by leave of the court filed in this action a replication to the plea of set-off, setting up the commencement of the equity suit, and stating the issues involved therein and the decree made upon the deci-

sion of this court dismissing the bill, and claimed that judgment as *res adjudicata* of the matters of set-off contained in the fourth and fifth counts of the defendant's plea. Then by a series of pleadings, too long and too technical for repetition, the final question was raised by demurrer as to whether the plaintiff's replication of *res adjudicata* to the defendant's plea of set-off was good or not. Upon the argument of the demurrer the Supreme Court held that the replication was good; that the merits of the whole case had been decided in the equity suit, and that the judgment in that suit was a bar to all claims of set-off on the part of the defendant Cummings in the action at law. The parties came to trial after the argument and decision upon the demurrer, and having waived a jury the following stipulation was filed:

"It is hereby stipulated and agreed by and between the parties to this cause, by their respective attorneys, that this cause may be tried by the court without a jury, the parties hereby expressly waiving the same, upon the following agreed statement of facts, subject to the limitations herein contained:

"That on the 31st day of July, A. D. 1889, and for a long time prior thereto, the plaintiff and the defendant were copartners engaged as attorneys in the prosecution of claims against the United States, the net fees derived therefrom being under the contract of partnership equally to be divided between them, the said partners; that on the 19th day of December, A. D. 1889, the plaintiff instituted this action to recover the sum of $2712.81, with interest from the 31st day of July, A. D. 1889; that the said sum is the identical sum referred to on pages 227 and 248 of the record on appeal to the Supreme Court of the United States in the equity cause hereinafter referred to; that after the institution of this suit the defendant herein instituted a certain equity proceeding against the plaintiff herein in the Supreme Court of the District of Columbia, the same being known and numbered on the dockets of said court as equity cause No. 12,263; the record, decrees and opinions of the respective courts therein, both in this and the appellate courts, are hereby referred to and made part hereof; that the several items of account set forth in the pleas of set-off herein are re-

spectively the identical items set up, referred to and claimed in said equity cause.

"If the court on inspection of said record and proceedings in said equity cause and of the record and proceedings of this cause shall be of opinion that the defendant herein may not set up in bar of the plaintiff's action any of said items of set-off and counter claim as pleaded in this action, but is concluded by the proceedings and decree in said equity cause, then this court may enter judgment for the plaintiff in this action for the sum of $2712.81, with interest thereon from the 31st day of July, A. D. 1889, as claimed in his declaration herein, but if the court shall be of opinion that any of said items of set-off and counter claim may be set up in bar of the plaintiff's action herein, then this cause shall be remanded to the docket for trial by jury. Both parties hereto reserve the right of appeal or by writ of error from the judgment of this court or of any court of review passing hereon, and also any other remedy which they may by law be entitled to."

Upon this stipulation in connection with the record in the equity suit, the Supreme Court held that the defendant Cummings could not in this action set up in bar to plaintiff's action any of the items of set-off attached to his plea, and therefore judgment was rendered for the plaintiff for the amount claimed by him. On appeal to the Court of Appeals the judgment was reversed, and a new trial granted, Mr. Chief Justice Alvey dissenting.

*Mr. Clarence A. Brandenburg* for petitioner.

*Mr. Holmes Conrad* opposing. *Mr. Franklin H. Mackey* was on his brief.

Mr. Justice Peckham, after making the above statement of facts, delivered the opinion of the court.

A perusal of the record in this case demonstrates at least how conservative Congress has heretofore been in relation to the adoption of any amendment of the law relating to pleading

and procedure in the District of Columbia.   The last of the se-
ries of pleadings herein by which the question of the validity
of the defence of *res adjudicata* was finally brought before the
court is denominated "defendant's joinder of issue on plaintiff's
second sur-rejoinder to defendant's fourth rejoinder to plain-
tiff's third replication."   Replications, rejoinders, sur-rejoinders,
rebutters, sur-rebutters and demurrers abound, and they all
seem to have been regarded as properly filed for the purpose of
presenting the question whether the decree in the equity case
was *res adjudicata* or not.   In reading these pleadings we seem
to be transported back to the days when the practice of the spe-
cial pleader had become a science by itself.   In spite of the
pleadings, however, the question before us is a simple one.

The plaintiff brought this action to recover from the defend-
ant a certain amount of money alleged to be due on an account
stated between the parties.   The defendant, before pleading in
the action, commenced a suit in equity for an accounting be-
tween himself as complainant and the defendant in the equity
suit in relation to all partnership matters, and, as a part of the
relief, prayed the cancellation of a written assignment made
by complainant of his interest in the inspector cases of the part-
nership to the defendant, procured, as complainant alleged, by
fraud.   It was alleged that the items of the claim of Baker,
the plaintiff in this action, arose out of the partnership transac-
tions, and they were included in the issue made in the equity
suit.   There was a full hearing in that suit in regard to all
the matters between the parties, including those arising in this
action.   At the end of the hearing the trial court entered a
decree in favor of the complainant for over $30,000, after de-
ducting the amount claimed against him by the plaintiff herein.
That decree was affirmed by the Court of Appeals, but upon
appeal here both decrees were reversed and the cause remanded
to the lower court with instructions to dismiss the bill.   The
court, upon the receipt of the mandate, did dismiss the bill with
costs.   The plaintiff in this action then proceeded with his case
and set up, by leave of the court, the decree in the equity suit
as an adjudication of all the matters relating to the validity of
the defendant's set-off to his demand, and the question is, Shall

the adjudication be treated as conclusive upon those matters, or shall the inquiry be again, entered upon as to the facts upon which the set-off rests?

Stated generally and without detail, the theory of the law is that matters which have once been fully investigated between the parties and determined by the court shall not be again contested, and that the judgment of the court upon matters thus determined shall be conclusive on the parties and never subject to further inquiry. The whole doctrine has been lately gone over in this court in *Southern Pacific Railroad Company* v. *United States,* 168 U. S. 1, and the law in regard to it is so well settled that other citations are not required. The question is not what the doctrine is, but does it apply to the particular case?

We have to inquire, therefore, whether the decree in the equity suit did cover and conclude the matters in difference, regarding the defendant's set-off in this action? If it did, that decree must be treated as conclusive, and the judgment of the court below refusing to give that character to it must be reversed.

It appears by the stipulation between the parties that the several items of account set forth in the defendant's plea of set-off in this action are respectively the identical items set up, referred to and claimed by complainant in the equity cause. The record in the equity cause is made a part of the record herein, and the facts upon which the complainant proceeded are set forth in the report of that case in this court, already referred to. The mandate from this court in that case, which by stipulation of counsel has been included in the record herein, sets forth our decree, which reversed the decree of the Court of Appeals with costs, and ordered that the cause be remanded to that court with directions to set aside the decree of the Supreme Court of the District of Columbia, and to remand the cause to that court with instructions to dismiss the bill. There was added the usual formula directing that such further proceedings be had in the cause in conformity with the opinion and decree of this court as ought to be had, etc. The proceedings, however, which were thus directed to be taken were simply to reverse the judgment of the lower court and to dismiss the

bill. It was not a conditional dismissal, without prejudice, or words to that effect, but a general one. A dismissal of the bill under such directions is presumed to be upon the merits, unless it be otherwise stated in the decree of dismissal. *Walden* v. *Bodley,* 14 Pet. 156, 161; *Hughes* v. *United States,* 4 Wall. 232, 237; *Durant* v. *Essex Company,* 7 Wall. 107; *Bigelow* v. *Winsor,* 1 Gray, 299, 301; *Foote* v. *Gibbs,* 1 Gray, 412; Coop. Eq. Pl. 270; 1 Herman on Estoppel, secs. 151, 152.

It cannot be disputed that if the bill had been dismissed upon the merits it would be conclusive against the right of the defendant in this action to set up in bar of plaintiff's recovery any of the items of set-off and counter claim pleaded by defendant. He contends, however, that for the purpose of determining the ground upon which the bill was dismissed, it is proper to resort to the opinion of the court, even though the record show an absolute dismissal, and that the opinion in this case shows the bill was not dismissed upon the merits, but only because of his (complainant's) laches in seeking the aid of a court of equity to set aside and cancel the written assignment made by the defendant herein to the plaintiff, and which, as the defendant alleges, was procured by fraud; that when relief was denied on the ground of such laches, the only effect of the denial and the consequent dismissal of the bill was to leave the complainant at full liberty to fight out the issue of fraud in this action.

We do not think this is a correct statement of the case. Assuming that defendant is right in his contention that he can look at the opinion for the ground of dismissal, we think it appears therefrom that the bill was in truth dismissed upon its merits. The court really went into an elaborate examination of the status of the complainant in the equity case with reference to his claim of right to avail himself of the alleged fraud, not only in respect to his laches technically so-called, but also with regard to his affirmative treatment of the defendant after he had, as this court decided, acquired full knowledge of all the facts which constituted what he claimed to be the fraud in the case. After he had acquired such knowledge, the complainant deliberately decided to, and did, procure the defendant's check

for $15,000 or substitutes therefor which he had himself taken, (the consideration given complainant for the sale) to be cashed, and complainant used the money for his own purposes. Not only laches on the part of the complainant formed the bar to the maintenance of the equity suit, but, as the court held, it was his whole conduct relative to the transaction after it had been completed, and his affirmance of the contract that precluded any right on his part to recover for any alleged fraud. His right to recover at all, upon the facts as found by the court from the evidence, was passed upon and decided.

Some expressions may be found in the opinion tending to show that the court was proceeding upon the ground merely of the complainant's laches in failing to resort early enough to the court for relief. But an examination of the whole of the opinion will show that the court was not confining itself to any such narrow ground, and on the contrary was examining the whole conduct of complainant, both his omissions and his affirmative and positive acts, for the purpose of determining whether the complainant had any cause of action against the defendant. For the purpose of such examination we make copious extracts from that opinion. After a full statement of the case the opinion, as reported in 169 U. S. at page 196, proceeds as follows:

"The controverted issue arising from the foregoing unquestioned facts is this:

"Cummings claims that he did not derive knowledge of the fraud he complains of from the matters just stated; whilst Baker asserts that if the fraud in the purchase complained of by Cummings had existed, full knowledge thereof was conveyed to Cummings by the facts above stated, and that the silence of the latter and his inaction for years, and until Baker had made claim for money and stated his intention to dissolve partnership, not only establishes the want of foundation for Cummings' assertion that there was misrepresentation and fraud in the sale, but also makes clear the fact that the right to make such claim was barred, both by limitations and laches, when the demand of Cummings was actually preferred.

"It results from the foregoing that the facts as to the controverted matters are embraced in a narrow compass, and that

the whole case really resolves itself into two issues: 1st. Does the proof establish that the purchase and sale in question was as claimed by Cummings, or as asserted by Baker? In that question is necessarily embraced the further one of whether Cummings, at the time of the sale, had actual knowledge of the fraudulent representations claimed to have been made by Baker. This is, in terms, included, because it would be impossible in reason to declare that one had been deluded or deceived by misrepresentations into entering into a contract if he had actual knowledge when the contract was made that the alleged inducing representations were false. 2d. Conceding that Cummings was misled by the fraudulent representations of Baker as alleged, did he immediately after the sale, and before the collection by him of the cash consideration of the sale, discover that the representations were untrue, and thereby become aware that he had been grossly deceived and defrauded, and did he, with such knowledge, say nothing about the matter, collect the cash consideration, remain silent, and continue in partnership with Baker, occupying the same office for years, and only assert that he had been deceived when a dissolution of the partnership was threatened, and he was pressed to pay a sum which Baker claimed Cummings owed him? This latter inquiry assumes a twofold aspect, for although in the bill, in the opinions below, and in the argument at bar, the efficient misrepresentation, which it is asserted rendered the assignment void, was the fraudulent statement as to the sum of the fees on the claims then allowed and appropriated for, nevertheless it is also, as we have seen, asserted in the bill and contended in argument that there was a misrepresentation as to the pending claims not yet acted upon by the Department, and which were then unappropriated for by Congress.

"We will defer an examination of the testimony as to the existence of the fraud and misrepresentation complained of until we have passed on the charge that, if there was fraud and misrepresentation, Cummings had full knowledge thereof immediately after the sale. We adopt this order of consideration because if it be found that such was the case, the question whether the fraud originally existed will become immaterial,

in view of the defences of limitation and laches. Moreover, in reviewing the question of knowledge, we will do so in the order stated, that is, first, discovery of the alleged fraud and misrepresentation as to the amount of fees collected and in process of collection from claims appropriated for at the time of the sale; and, second, discovery of the misrepresentation as to the amount of pending claims from which further fees were expected. Here, also, it is to be premised that if the first proposition be found to be well taken, an examination of the second will be wholly unnecessary. This, obviously, is the case, for, as the statute of limitations began to run from the time when suit might have been brought to annul the sale, it results that the discovery of the falsity of *any* material and fraudulent representation by which the sale had been induced, gave rise to the right to commence an action to rescind, and therefore fixed the period when the statute of limitations commenced its course."

And again on page 206:

" Our conclusion is, that the evidence not only clearly but beyond all question or dispute overwhelmingly shows that if the false representations as to the earned fees were made as alleged, there was entire knowledge thereof by Cummings. And, for reasons heretofore stated, this conclusion renders unnecessary any inquiry into the question of when Cummings discovered the falsity of the alleged representations as to the amount of pending claims. . . . That Cummings might at his election have pursued a remedy for the alleged fraud in a court of law is obvious. And it is equally clear that such remedy at law, by action on the case predicated on the facts as to deceit and fraud, which are alleged in the bill now before us, would have been barred in three years from the discovery of the fraud under the Statute of Limitations of Maryland of 1715, c. 23, s. 2, in force in the District of Columbia. 1 Kilty's Statutes, 111; Comp. Laws Dist. Col. c. 42, s. 6, p. 360. It hence follows, irrespective of the equitable doctrine of laches, that the relief which the bill seeks to obtain ought not to be allowed by a court of equity.

" Apart, however, from the bar of the statute of limitations,

the facts as to the full knowledge of the fraud, if any existed, by Cummings more than three years before the filing of his bill, and his conduct after he obtained it, his permitting Baker to go on and prosecute the claims as if they were his own, debars Cummings from invoking a court of conscience to put him in a much better position than he could possibly have occupied if he had spoken and asserted his rights in due season.

"There cannot be a doubt that the right existed in Baker to have dissolved the partnership at any time. If this right on his part had been exercised, Cummings would not have been in a position to have availed himself of the labors of Baker in prosecuting the future claims to a successful culmination, and would not therefore have been a participant in the profits arising therefrom. If with a full knowledge of the fraud Cummings chose to remain silent, to permit Baker to go on with the prosecution of the claims, to incur the expenditure of time and labor not only in the cases in which he was successful but in the cases in which he failed, Cummings cannot in conscience be allowed to reap the rewards which he could not possibly have obtained had he spoken with reasonable promptness, when the knowledge of the fraud, if it existed, was brought home to him in the most pointed and unequivocal way."

And the court winds up the opinion with the following remark:

"Because we rest our conclusions upon the application of the bar of the statute and the laches of Cummings, we must not be considered as intimating that we conclude that there was either clear and convincing proof, or even a preponderance of proof, that the sale was as claimed by Cummings."

From this last extract it seems to be clear that the court had in fact examined the evidence as to the alleged fraud and had concluded it was not proved. The result of the whole opinion is to say in substance that while we have read the evidence in the case and do not think there is even a preponderance of it in favor of a finding of fraud, yet notwithstanding that fact we will place our judgment upon the ground that the evidence shows the complainant has himself so acted in the case, both by his neglect and, among other things, by his drawing the money

on the check, that he has affirmed the contract after he knew all the facts upon which he now founds his allegation of fraud; that he has waived the fraud and all benefit that he might otherwise have urged by reason of it. A waiver of all right to question the validity of a contract may be founded upon the claiming and acceptance of a benefit under it after full knowledge of all the facts. 2 Pom. Eq. Juris. 2d ed. sec. 897, and cases cited in note 1. From all this we think no other conclusion is accurate than to say the decision of this court was based upon the merits of the case within the meaning of that expression when used to distinguish a decision of the court upon the merits from a decision based upon a lack of jurisdiction or defect of parties or anything of that nature. Here there was no lack of jurisdiction, the parties were before the court, and full power to grant relief entirely commensurate with the plaintiff's rights existed in the court. It is therefore incorrect to say that by the dismissal of the complainant's bill he has simply been remitted to his less effective remedy at law. This is to ignore the weight and effect of the opinion upon the matters just discussed and to open for another contention a subject which we think the decree in the equity case has closed for all time. It cannot be that after the determination of an investigation such as has been had in the equity case, and the entry of a decree thereon dismissing the bill, the matter can again be opened for contest in this action at law.

*For these reasons, we think the judgment of the Court of Appeals of the District of Columbia should be reversed and the case remanded to that court with instructions to reinstate the judgment of the Supreme Court of the District in favor of the plaintiff, and it is so ordered.*

MR. JUSTICE BREWER did not hear the argument and took no part in the decision of this case.