## UNITED STATES v. JACKSON.

Circuit Court of Appeals, Tenth Circuit.
July 29, 1929.

No. 20.

L. E. Wyman, Asst. U. S. Atty., of Topeka, Kan. (Al F. Williams, U. S. Atty., of Topeka, Kan., on the brief), for the United States.

Turner W. Bell, of Leavenworth, Kan., for appellee.

Before LEWIS, COTTERAL and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge. Charles Jackson brought this action against the United States to recover upon a policy of war risk insurance under and by virtue of section 445, title 38, U. S. C. (38 USCA § 445).

The trial court ordered and adjudged that appellee recover the sum of $57.50 for each and every month from October 30, 1918, to the date of such judgment, to wit, February 16, 1928, together with interest at the rate of 6 per cent. per annum on each of such unpaid installments and that the judgment bear interest at the rate of 6 per cent. per annum from its date until paid.

The trial court further ordered and adjudged "that from and after this date the bureau of war risk insurance shall pay directly to the plaintiff the sum of $57.50 per month as long as he shall live, and his permanent disability shall continue, unless the plaintiff shall forfeit his right to the same as provided by the war risk insurance act. Jurisdiction of this cause is reserved in order that the defendant may at any time present to this court and in this action any showing as to why such payments so directed to be made should cease."

The United States has appealed from this judgment and has assigned two grounds of error: First, that the court erred in awarding interest to the appellee on the unpaid in-

stallments and on the judgment; second, in reserving jurisdiction of the cause to determine, upon application of the United States, whether payment of future installments should cease.

First, with reference to the question of reserved jurisdiction. It is well settled that the court was without authority to render judgment for payments of future installments on the contract of insurance. United States v. Lyke (C. C. A. 9) 19 F.(2d) 876, 878; United States v. Napoleon (C. C. A. 5) 296 F. 811, 815.

The United States cannot be sued, except by its own consent, and the right of the insured to sue the United States upon a contract of war risk insurance is given solely by the provisions of section 445, title 38, U. S. C. (38 USCA § 445), which reads, in part, as follows:

"In the event of disagreement as to claim under a contract of insurance between the bureau and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the Supreme Court of the District of Columbia or in the District Court of the United States in and for the district in which such persons or any one of them resides, and jurisdiction is conferred upon such courts to hear and determine all such controversies. The procedure in such suits shall be the same as that provided in sections 762 and 763 of Title 28, and section 765 of Title 28, in so far as applicable."

The right to sue upon such a claim, under this statute, arises only in the event of disagreement between the bureau and the insured in respect to such claim. In the instant case the right of the appellee to future installments, under his contract of insurance, depends upon the continuation of total permanent disability. If he should recover the ability to follow a substantially gainful occupation, his right to receive such future installments would cease, under the provisions of Treasury Regulation No. 11. The determination of such a recovery, in the first instance, rests with the bureau of war risk insurance. The jurisdiction of a District Court of the United States to determine whether the appellee had so recovered would not arise until a disagreement had occurred relative thereto between the insured and the bureau.

It is therefore our conclusion that the trial court erred in undertaking to reserve jurisdiction to determine whether the payment of future installments should cease.

United States v. Lyke, supra, pages 877, 878, of 19 F.(2d).

Second, with reference to the award of interest. This presents a more difficult question. The general rule as to the right to recover interest on claims against the United States was stated in Seaboard Air Line R. Co. v. United States, 261 U. S. 299, 43 S. Ct. 354, 355 (67 L. Ed. 664), as follows: "The rule is that, in the absence of a stipulation to pay interest or a statute allowing it, none can be recovered against the United States upon unpaid accounts or claims." See, also, Boston Sand & Gravel Co. v. United States, 278 U. S. 41 at page 47, 49 S. Ct. 52, 73 L. Ed. 170.

An ordinary claim must be distinguished from a claim for damages for the taking of property for public use, because in the latter case the Constitution provides for just compensation, and just compensation includes interest from the date of the taking to the date of the payment. Seaboard Air Line R. Co. v. United States, supra, pages 304–306 of 261 U. S. (43 S. Ct. 354).

Neither the statute nor the contract of war risk insurance makes express provision for the payment of interest. If the United States is liable for interest, it must be because of an implied provision of the contract.

In the case of Standard Oil Co. of N. J. v. United States, 267 U. S. 76, 45 S. Ct. 211, 69 L. Ed. 519, which was an action upon a policy of marine insurance issued under the provisions of the Act of September 2, 1914 (38 Stat. 711), the court held that, when the United States went into the business of insurance, issued policies in familiar form, and provided that in case of disagreement it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business, including the payment of interest. This case was relied upon by the trial court as authority for awarding interest in the instant case.

It is true that Congress, by the same statute, created the Bureau of War Risk Insurance and authorized the government to issue policies of marine insurance and policies of life and permanent disability insurance. However, the acts of Congress disclose that the nature and purposes of the two classes of insurance differed in material particulars. Marine insurance was first authorized by the Act of September 2, 1914 (38 Stat. 711). Section 2 thereof reads as follows:

"That the said Bureau of War Risk Insurance, subject to the general direction of

the Secretary of the Treasury, shall, as soon as practicable, make provisions for the insurance by the United States of American vessels, their freight and passage moneys, and cargoes shipped or to be shipped therein, against loss or damage by the risks of war, whenever it shall appear to the Secretary that American vessels, shippers, or importers in American vessels are unable in any trade to secure adequate war risk insurance on reasonable terms."

The provisions for life and disability insurance were provided by the amendment of October 6, 1917, 40 Stat. 409.

Section 400 of article 4 of the Act of October 6, 1917, reads as follows:

"That in order to give to every commissioned officer and enlisted man and to every member of the Army Nurse Corps (female) and of the Navy Nurse Corps (female) when employed in active service under the War Department or Navy Department greater protection for themselves and their dependents than is provided in Article III, the United States, upon application to the bureau and without medical examination, shall grant insurance against the death or total permanent disability of any such person in any multiple of $500, and not less than $1,000 or more than $10,000, upon the payment of the premiums as hereinafter provided."

In the Standard Oil Case the Supreme Court held that the United States had gone into the business of marine insurance and issued marine insurance policies in the usual form of such policies. On the contrary, in issuing life and disability insurance policies, under the provisions of the amendment of October 6, 1917, the United States did not go into the life insurance business and did not issue life insurance policies in the usual form. Furthermore, under such policies the payments to be made in case of death or permanent disability were not indemnity in their entirety, but were partly in the nature of pension.

In the case of Birmingham v. United States (C. C. A.) 4 F.(2d) 508, 509, the court said:

"The government in devising and putting in effect its plan of war risk insurance did not enter the field of business in the accepted sense for commercial purposes and pecuniary gain, and therefore does not stand in the same relation to the insured as do ordinary insurance companies. It can be held only to the extent that it has expressly consented to be held upon contracts of this nature."

In the case of White v. United States, 270 U. S. 175, at page 180, 46 S. Ct. 274, 275 (70 L. Ed. 530), the court said:

"The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it and the relation of the government to them if not paternal was at least avuncular. It was a relation of benevolence established by the government at considerable cost to itself for the soldier's good."

In the case of United States v. Lyke, supra, at page 877 of 19 F.(2d), the court said:

"The war risk insurance contract for the soldier is not a business contract. It partakes of the nature of both insurance and pension."

Since the government, by issuing its policies of life and permanent disability insurance under the provisions of the amendment of October 6, 1917, did not go into the life and disability insurance business, and since contracts of insurance issued thereunder were not the same as ordinary insurance contracts issued by private life insurance companies, but provided for payments partially in the nature of insurance and partially in the nature of pension, we do not think it follows that by issuing such contracts and consenting to be sued thereon the United States accepted the ordinary incidents of suits upon ordinary contracts of life insurance, including liability for interest. It follows that the contract contained no implied promise to pay interest. It is therefore our conclusion that the court erred in awarding interest.

The cause is reversed and remanded, with instructions to grant a new trial to the United States.