**UNITED STATES v. CATHCARD et al.**

**Civ. No. 59.**

District Court, D. Nebraska, Omaha Division.

April 24, 1946.

Joseph T. Votava, U. S. Dist. Atty. for the Dist. of Neb., of Omaha, Neb., for plaintiff.

C. L. Dawson, of Washington, D. C., and Carl T. Self, of Omaha, Neb., for defendants.

DONOHOE, District Judge.

This is an action by the United States against James S. Cathcard, incompetent, and Helen L. Marsh, his guardian, to recover from the defendants the sum of $7,964.11, with interest and costs, on the ground that the defendants are indebted to the United States in that amount.

It is alleged in the complaint that this sum represents a balance due to the United States from the defendants on account of payments of compensation and vocational training pay, which were made to the incompetent, a veteran of World War I, under the provisions of legislation enacted for the benefit of veterans. The government alleges that the incompetent was not entitled to receive these payments due to the fact of reenlistment in the United States army, and the perpetration by him of a fraud upon the United States.

It is also charged, in substance, that the terms of the legislation under which the payments were made provide that in case of fraud the recipient is obligated to refund to the United States the money received, and that such legislation creates a contractual obligation on his part to do so.

On the evidence which has been submitted to the court, a trial by jury having been waived by stipulation, the court makes the following special Findings of Fact:

### Findings of Fact

1. The defendant, James S. Cathcard, served as a soldier in the United States army from May 11, 1918, until July 5, 1919, and was honorably discharged on the latter date.

2. During the period of his military service between May 11, 1918, and July 5, 1919, the defendant James S. Cathcard was granted war risk insurance, and thereafter, with the consent of the United States, converted such insurance into convertible term insurance.

3. On February 18, 1920, James S. Cathcard executed a claim for disability benefits on the ground that he had contracted disabilities during his period of military service.

4. On August 30, 1920, before the allowance of the claim for disability benefits, James S. Cathcard attempted to enter into a purported contract of reenlistment.

5. On September 14, 1920, James S. Cathcard deserted from the army, and was not "apprehended" until February 28, 1926, and was thereafter discharged on April 19, 1926, "not honorable per desertion, not admitted, and physical unfitness."

6. Between August 30, 1920, and February 28, 1926, the United States paid out on account of James S. Cathcard the sum of $5,019.35, as compensation payments, and the sum of $1,018.60 as vocational training payments.

7. Between October 5, 1926, and November 30, 1928, the United States paid out on account of James S. Cathcard the sum of $2,072.26 as compensation payments.

8. After James S. Cathcard was discharged on April 19, 1926, following his purported reenlistment, the Regional Office of the Veterans' Administration stopped his award for compensation and vocational training payments, effective as of the date of reenlistment.

9. On October 6, 1926, the Committee on Recoveries, Central Office, of the Veterans' Administration rendered a decision waiving recovery of overpayments of compensation to James S. Cathcard in the amount of $4,873.07.

10. On February 26, 1927, the Committee on Recoveries, Central Office, of the Veterans' Administration rendered a decision waiving recovery of overpayments of training allowances to James S. Cathcard in the amount of $1,018.66.

11. On November 24, 1928, the Committee on Recoveries, Central Office, of the Veterans' Administration, reconsidered its former decisions waiving recovery of overpayments to James S. Cathcard, and then set those decisions aside and held that recovery of the overpayments was not waived.

12. On February 25, 1932, the Central Committee on Recoveries and Forfeitures rendered a decision holding that James S. Cathcard had, by conspiring to defraud the government, violated Section 504 of the World War Veterans' Act, and had thereby forfeited all claims and benefits under Title II and IV of the Act, as amended.

13. After a hearing held on March 28, 1932, the Administrator's Board of Appeals rendered a decision affirming the Central Committee's decision of February 25, 1932.

14. On June 5, 1933, James S. Cathcard, incompetent, by his next friend and legal guardian, Helen L. Marsh, commenced an action designated as No. 3127 Law, in the District Court of the United States, for the District of Nebraska, Omaha Division, against the United States to recover accumulated monthly installments under policies of war risk or converted term insurance.

15. The issues in case No. 3127 Law included the questions of whether James S. Cathcard was insane by reason of mental diseases contracted during his period of military service between May 11, 1918, and July 5, 1919, and whether such insanity had continued since this period of military service, thereby rendering him totally and permanently disabled.

16. In case No. 3127 Law, a judgment was rendered against the United States on July 8, 1936, in the amount of $2,232.34 for accumulated monthly installments of insurance, and this judgment, being unappealed, became final.

17. On or about February 21, 1938, an action was filed in the District Court of the United States for the District of Columbia by the United States on the relationship of Helen L. Marsh, as legal guardian and next friend of James S. Cathcard, an incompetent, against Frank T. Hines, as Administrator of Veterans' Affairs, and Richard N. Elliott, Acting Comptroller General of the United States, for a writ of mandamus to compel payment of the judgment in case No. 3127 Law.

18. On April 17, 1939, the United States Court of Appeals for the District of Columbia rendered a decision affirming a judgment issuing a writ of mandamus.

19. The court further finds all of the facts which have been stipulated.

### Discussion

It has been stipulated that on October 6, 1926, an order was entered by the Probate Court of Hennepin County, Minnesota, appointing William FitzGibbons as guardian for James S. Cathcard, and it appears from the evidence and argument that, pursuant to a petition alleging that James S. Cathcard had regained his mental capacity, the Minnesota court entered an order on January 31, 1928, finding that Cathcard was then of sound mind and discharging the guardian. Subsequently, on August 19, 1930, another guardian was by the same court appointed for Cathcard, and this guardian continued in that capacity until discharged by an order of the court, dated February 4, 1931. Thereafter Helen L. Marsh, the veteran's mother, was appointed as his guardian by an order of the County Court of Douglas County, Nebraska, in April of 1931.

The sum of $7,964.11, which the United States now seeks to recover in this action, is made up of different items, and some-

what different grounds of recovery are urged with respect to the various items. The first item is an amount of $5,019.35, representing compensation payments made between August 30, 1920, and February 28, 1926. The second item is for $1,018.60, covering vocational training payments which were made between the same dates. The government is also attempting to recover, as the third item in the total of $7,964.11, the sum of $2,072.26 (less $146.10 conceded to have been properly paid to the veteran) representing compensation payments made from October 5, 1926, to November 30, 1928.

As grounds for the recovery of the first two items representing compensation and vocational training payments made between the date the veteran allegedly reenlisted and the date of his "apprehension" after desertion, the government contends that the veteran was not entitled to such payments because he was then in an active service pay status within the statute, 38 U.S.C.A. § 422, excluding those in receipt of active service pay from the benefit of compensation and vocational training payments. It is the government's contention that the fact that the veteran was prevented from receiving active service pay by his misconduct during the time of his desertion does not preclude him from being in an active service pay status, within the statute, during that time. Recovery of these payments is therefore sought on the ground that they were paid under a mistake of law and fact, the veteran having allegedly concealed his reenlistment, and that the Central Committee's waiver of recovery of the overpayments was based upon fraud in connection with the Minnesota court's determination of the veteran's insanity.

However, contrary to the government's contention in this matter, there is nothing on the face of the Committee's decisions waiving recovery which indicates that the Committee was then influenced in any way by what occurred in the Minnesota court.

Recovery of the item representing compensation payments made between October 5, 1926, and November 30, 1928, is claimed on the ground that these payments were made under a new award obtained as of the former date by the veteran through alleged fraud and misrepresentation in procuring the Minnesota court's adjudication of his insanity. The government also bases its case upon Sections 205, 210 and 504 of the World War Veterans' Act of 1924, 38 U.S. C.A. §§ 494, 499 and 555, providing for the termination of compensation in case of fraud by the beneficiary and for forfeiture of payments made when based upon a fraudulent showing.

Finally, the government places much emphasis on the argument that under the provisions of the Act of October 17, 1940, 38 U.S.C.A. § 11a—2, the decisions of the Veterans' Administrator, through his duly delegated committees, rescinding the earlier decisions waiving recovery of the alleged overpayments is final and conclusive, and that the District Court is without jurisdiction to review any of such decisions in the instant action.

The defendants' responsive pleading to the complaint, which is designated as an "Answer Presenting Defenses Under Rule 12(a) [Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c]", sets up numerous grounds of defense, including a plea that the complaint fails to state a claim upon which relief may be granted; a defense that the action is barred by the statute, 28 U.S.C.A. § 791, fixing five years as the period within which actions for the recovery of a penalty or forfeiture accruing under the laws of the United States must be commenced; and a plea of res judicata.

The answer also alleges that the money now sought to be recovered was lawfully paid to the defendant Cathcard, or his guardian, and that the former was entitled to receive the same on account of service connected disabilities, which had been found by the proper authorities to exist. It is also alleged that the defendant Cathcard did not reenlist in the military service on August 30, 1920, because he was then insane and incompetent, thereby being incapable of entering into a purported contract of enlistment.

It is averred as further defenses that the defendant Cathcard was not in receipt of active service pay as a member of the naval or military forces of the United States dur-

ing the period of his alleged reenlistment, and that the Central Committee's decision of February 25, 1932, holding that the defendant Cathcard had forfeited his right to compensation by acts committed in October of 1926 was void, because the forfeiture was not declared within five years from the date when the acts were allegedly committed.

A further defense is set up in the form of allegations that the Committee's decision is void because rendered at an ex parte hearing without notice to the veteran or his guardian, and without according them an opportunity to be represented by counsel; also that the proceedings in connection with such decision violated the veteran's right under the provisions of the Fifth Amendment dealing with due process.

The answer sets forth, in addition to the foregoing defenses, certain counterclaims which will be considered in a subsequent part of this memorandum.

Without passing upon the merits of the respective contentions which have been urged by the government in support of its case, it is sufficient to say that the rights of those who are now parties to the instant action must be considered and determined in the light of former litigation between these parties. Especially, reference is made to a former action, designated as No. 3127 Law, brought in this court by James S. Cathcard, incompetent, by his next friend and legal guardian, Helen L. Marsh, against the United States, on a policy of war risk or converted term insurance. I quote in a footnote [1] those parts of the allegations in

[1] The petition in No. 3127 Law, after alleging plaintiff's residence, his incompetency, the appointment by the County Court of Douglas County, Nebraska, of Helen L. Marsh as guardian, and that the plaintiff had served in the United States Army from May 11, 1918, to July 5, 1919, and other preliminary matters, continues by alleging:

"3. That the plaintiff while in the said service of the United States Army applied for and was granted War Risk Insurance in the amount of $10,000.00 under the provisions of the War Risk Insurance Act pertaining to the issuance of such insurance to persons in the Military Service of the United States of America and that he paid the required premiums on the said insurance provided monthly as the same came due, and that said policy of insurance provided among other things that in case of death or total permanent disability of the plaintiff, payment of premiums on the said policy of insurance would cease and there would be payable to the said plaintiff or his legal representatives in case of death or total permanent disability the sum of $57.50 for each and every month during the period of total permanent disability until the full sum as provided in the said insurance policy is fully paid with benefits therein provided.

"4. That the plaintiff received total and permanent injuries and disabilities while in the said service of the defendant as aforesaid and while the said policy of insurance was in full force and effect and while under heavy strain and exposure in said service and while policy of insurance was in effect by reason of which he became mentally unbalanced and deranged permanently, and while said

policy was in force contracted encephalitic organic dementia, influenza, epilepsy, insanity, mental suicidal depressions, dementia praecox, hypophrenia, melancholy, chronic pulmonary tuberculosis and other lung diseases, rheumatism, ear diseases causing deafness in his ear, and eye troubles twitching of the eyes and flat feet, insomnia, and other mental and physical disabilities all of which were contracted while in the said service and while the said policy of insurance was in full force and effect and that said disabilities have continued ever since his said discharge and were permanent at the time of discharge and at the time the said policy of insurance was in full force and effect and have remained so ever since and that by reason thereof the plaintiff was at the time of the said discharge and when the said policy was in full force and effect totally and permanently disabled and has remained so ever since and with reasonable certainty will so continue during the remainder of his life time and by reason of which he has been so totally and permanently disabled that he has been from the time of the said discharge and while the said policy of insurance was in full force and effect, unable to continuously carry on any substantially gainful occupation and in fact has been in hospitals or under private care continuously and has been unable to do any work at all."

The petition is concluded with a prayer for judgment against the United States in the amount of $9,660 as accumulated payments of war risk term insurance or, as an alternative, a judgment in the amount of $8,970 under the veteran's reinstated policy of war risk term insurance; or, as a further alter-

the petition and answer in No. 3127 Law, which are now material in the instant case; such pleadings having been offered and received in evidence in this action.

Summarizing the allegations of the petition in No. 3127 Law, in so far as such allegations are now material, it was there alleged that the veteran had received total and permanent disability while in military service between May 11, 1918, and the date of his discharge on July 5, 1919; that such disability consisted of encephalitic organic dementia, influenza, epilepsy, insanity, mental suicidal depression, dementia praecox, hypophrenia, melancholy, chronic pulmonary tuberculosis, and so forth, all of which were contracted while in military service; and that such disability had continued ever since the veteran's discharge and was permanently and totally disabling.

The government's answer in No. 3127 Law, aside from admitting that the veteran had converted his war risk term insurance into convertible term insurance, and that a claim for payment of the converted policy had been denied, amounted to a denial of all other allegations of the petition relating to the veteran's claim for insurance benefits under the converted term insurance policy.

Under the issues as thus raised by the pleadings, and evidence regarding the sanity of James S. Cathcard as far back as the year of 1919, the court in No. 3127 Law rendered a judgment, which has been offered and received in evidence in the instant action, finding that Cathcard was totally and permanently disabled within the meaning of the converted term insurance policy on January 27, 1932, on which date the policy matured. A judgment was awarded against the United States in the amount of $2,232.34 for accumulated monthly installments of insurance, including a refund of $261.80 for premiums paid.

There was no appeal from this judgment, and it became final. The judgment was paid as the result of a mandamus proceeding subsequently brought in the District Court of the United States for the District of Columbia by the United States on the relation of Helen L. Marsh, as legal guardian and next friend of James S. Cathcard, incompetent, against Frank T. Hines, as Administrator of Veterans' Affairs, and the Acting Comptroller General of the United States. The District Court's judgment issuing a Writ of Mandamus was affirmed by the United States Court of Appeals for the District of Columbia, Hines v. United States ex rel. Marsh, 70 App.D.C. 206, 105 F.2d 85.

In support of the defenses of res judicata, the defendants are now relying upon the judgments in No. 3127 Law, and in the subsequent mandamus proceeding. The defendants are also leaning heavily upon the argument that the government, by failing and refusing to take advantage of opportunities to present a counterclaim or set off in either the action for war risk insurance or the mandamus proceeding, is now barred from recovering in the instant action.

The doctrine of res judicata is generally said to have, as the essential requirements for its application, the existence of four elements: (1) identity of subject matter or thing sued for, (2) identity of the cause of action, (3) identity of the parties to the action, and (4) identity in the quality or capacity of such parties. Freeman on Judgments, 5th Ed., Section 671; Lyon v. Perin & Gaff Manufacturing Co., 125 U.S.

---

native, a judgment in the amount of $3,186 as accumulated payments under the veteran's five-year converted term insurance policy, and for other relief.

The answer in case No. 3127 Law is in the following language:

"Comes now the defendant and for answer to the plaintiff's petition filed herein alleges as follows:

"1. Defendant admits that plaintiff converted his said War Risk Term Insurance on or about the 1st day of July, 1927, by and with the consent of the defendant herein in the amount of $7,000, and that said policy of converted insurance in number K–695,847; and admits that plaintiff herein filed a claim for payment of said converted policy and that said claim was denied.

"11. Defendant denies each and every other allegation contained in the petition of plaintiff relating to his claim for recovery of insurance benefits under his converted insurance policy number K–695,847.

"Defendant therefore prays that the plaintiff take nothing by his petition and that the defendant recover its costs herein expended."

698, 8 S.Ct. 1024, 31 L.Ed. 839; Privett et al v. United States, et al, 8 Cir., 261 F. 351, affirmed 256 U.S. 201, 41 S.Ct. 455, 65 L.Ed. 889. However, in connection with the requirements of identity of parties, see Sunshine Anthracite Coal Company v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263, indicating some relaxation in connection with these requirements. I quote from at pages 402 and 403 of 310 U.S. at page 916 of 60 S.Ct., 84 L.Ed. 1263 of the opinion in that case: "Where the issues in separate suits are the same, the fact that the parties are not precisely identical is not necessarily fatal. As stated in Chicago, R. I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 620, 46 S.Ct. 420, 423, 424, 70 L.Ed. 757, 53 A.L.R. 1256. 'Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different, * * * and parties nominally different may be, in legal effect, the same.' A judgment is res judicata in a second action upon the same claim between the same parties or those in privity with them. Cromwell v. [Sac] County, 94 U.S. 351, 24 L.Ed. 195. There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government. See Tait v. Western Maryland Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405. The crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy."

■ While the above case appears to be a sufficient answer to the government's contention that, because of the difference in parties, the doctrine of res judicata cannot now be applied with respect to the judgment in the Mandamus proceeding, it is not deemed to be necessary to expressly pass upon this contention because of conclusions to be hereinafter reached. There is, however, authority for the statement that where an action is brought against a governmental agency as a party, the court will look through the nominal parties and treat the case as one in fact against the United States. Union National Bank of Clarksburg, W. Va.

v. McDonald, D.C.W.Va., 36 F.Supp. 46, and cases there cited.

■ The established rule is that where the second suit is upon the same cause of action and between the same parties, or their privies, as the first, a final judgment on the merits in the former action is conclusive in the latter as to each question and issue which was or which might have been presented and determined in the first suit. Pierce v. National Bank of Commerce in St. Louis, 8 Cir., 268 F. 487, certiorari denied 273 U.S. 730, 47 S.Ct. 240, 71 L.Ed. 863; Commercial Electrical Supply Company v. Curtis, et al., 8 Cir., 288 F. 657, certiorari denied 263 U.S. 709, 44 S.Ct. 36, 68 L.Ed. 518; Guettel v. United States, 8 Cir., 95 F.2d 229, certiorari denied 305 U.S. 603, 59 S.Ct. 64, 83 L.Ed. 383; Cromwell v. Sac County, 94 U.S. 351, 24 L.Ed. 195.

■ The test of the identity of causes of action is the identity of the evidence necessary to maintain them. Pierce v. National Bank of Commerce in St. Louis, 8 Cir., 268 F. 487; Union Central Life Insurance Company of Cincinnati, Ohio, et al. v. Drake, 8 Cir., 214 F. 536; Freeman on Judgments, 5th Ed., Section 687.

■ Applying this test, it is apparent that an extensive argument or citation of authorities is not needed to support the conclusion that the present action involves neither the same subject matter nor the same cause of action as the previous actions for war risk or converted term insurance and for a Writ of Mandamus to compel payment of the judgment in that case. The doctrine of res judicata, in its strict sense, is therefore not applicable in the instant case. See Aetna Life Insurance Company of Hartford, Conn. v. Martin, 8 Cir., 108 F.2d 824.

■ The rules which are decisive as to whether the government shall prevail in this action have been heretofore considered and announced by this court in at least two other cases. McCreary v. New York Life Ins. Co., No. 81 Equity, North Platte Division, appeal dismissed, 8 Cir., 82 F.2d 1015, and The Equitable Life Assurance Society of the United States v. Gillan et al., 70 F. Supp. 640. Having previously in this memorandum held that the present action does

not involve the same subject matter, or cause of action, as the actions for war risk or converted term insurance and mandamus, I now quote the applicable rule as announced in the Eighth Circuit by Judge Sanborn in the case of Hottelet Co. v. Garden City Milling Co., 285 F. 693, 696, and as heretofore set forth by the District Court in the McCreary case: "Again, when the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action; but it is not conclusive relative to other matters which might have been but which were not litigated or decided." Citing cases.

See also Pierce v. National Bank of Commerce in St. Louis, 8 Cir., 268 F. 487.

In Hartford Life Insurance Company v. Ibs, 237 U.S. 662, 35 S.Ct. 692, 59 L.Ed. 1165, L.R.A.1916A, 765, also cited by this court in the McCreary case, the Supreme Court said at page 673 of 237 U.S., at page 696 of 35 S.Ct., 59 L.Ed. 1165, L.R.A.1916A, 765: " 'Even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established so long as the judgment in the first suit remains unmodified.' Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 48, 49, 18 S. Ct. 18, 42 L.Ed. [355], 376, 377."

The often quoted case of Southern Pacific Railroad Co. v. United States, 168 U. S. 1, at pages 48, 49, 18 S.Ct. 18, at page 27, 42 L.Ed. 355, states the rule in this language: "The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very

object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them."

The rule has also been stated in the following language: "There is no doubt that a final judgment or decree necessarily affirming the existence of any fact is conclusive upon the parties or their privies, whenever the existence of that fact is again in issue between them, not only when the subject matter is the same, but when the point comes incidentally in question in relation to a different matter, in the same or any other court, except on appeal, writ of error, or other proceeding provided for its revision." Freeman on Judgments, 5th Ed., Section 670.

The Restatement of the Law of Judgments, Section 45, states:

"Where a valid and final personal judgment is rendered in an action to recover money, the judgment is conclusive between the parties, except on direct attack, to the following extent * * *

(c) Whether the judgment is in favor of the plaintiff or of the defendant, it is conclusive in a subsequent action between them upon the issues actually litigated in the action."

And sub-section (1) of Section 68 provides: "(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action, except as stated in Sections 69, 71 and 72." (Sections 69, 71 and 72 deal with appeal, lack of jurisdiction and property subsequently acquired by the parties.)

Attention is also especially directed to the following language of the Supreme Court in Baker v. Cummings, 181 U.S. 117,

662

21 S.Ct. 578, 45 L.Ed. 776, at page 124 of 181 U.S., at page 581 of 21 S.Ct., 45 L.Ed. 776: "Stated generally and without detail, the theory of the law is that matters which have once been fully investigated between the parties and determined by the court shall not be again contested, and that the judgment of the court upon matters thus determined shall be conclusive on the parties, and never subject to further inquiry. The whole doctrine has been lately gone over in this court in Southern Pacific Railroad Company v. United States, 168 U.S. 1, 42 L.Ed. 355, 18 S.Ct. 18, and the law in regard to it is so well settled that other citations are not required. The question is not what the doctrine is, but Does it apply to the particular case?"

■ However, as was said by this court in the Equitable Life Assurance Society of the United States, a corporation, v. Gillan, et al, supra, the estoppel of a judgment, when interposed in a second suit on a different cause of action, extends only to matters of ultimate fact, as distinguished from matters of evidence or evidentiary facts. See also note in 142 A.L.R. beginning at p. 1243, and Restatement of the Law of Judgments, Section 68, comment p.

Another limitation on the doctrine of estoppel by judgment, or collateral estoppel, as it is frequently called, see Restatement of the Law of Judgments, Section 45, comment c, is that it is restricted to facts and matters directly in issue and actually litigated and determined in the former action. Cromwell v. Sac County, 94 U.S. 351, 24 L.Ed. 195, 94 U.S. at page 353; Virginia-Carolina Chemical Company v. Kirven, 215 U.S. 252, 30 S.Ct. 78, 54 L.Ed. 179; and the finding of which is necessary to uphold the judgment, Freeman on Judgments, 5th Ed., Section 689.

But it is not necessary to the conclusiveness of the former judgment that the issue should have been taken upon the precise point which it is proposed to controvert in the collateral action, it being sufficient if that point was essential to the former judgment. While the effect of a former judgment as an estoppel is limited to matters involved in the litigation, it is equally conclusive whether the point decided was of itself the ultimate vital point or only incidental, if its determination was necessary to the judgment. "A judgment concludes not only the technical fact in issue, but also each component fact necessarily involved in its determination", and matters which follow by necessary inference from an adjudication because the judgment could not have been rendered without determining them are as effectively concluded thereby as though specifically and in detail adjudicated. Freeman on Judgments, 5th Ed., Sections 692 and 693, and cases there cited.

■ Another applicable rule is that where a question is put in issue by the pleadings in a non-jury case, before a court of competent jurisdiction, and no judgment can properly be rendered without determining that question, the judgment is conclusive as to such question notwithstanding that no specific findings in regard thereto are made by the trial judge. Fayerweather v. Ritch, 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193. See also 34 C.J., p. 923, 30 Am.Jur., pp. 929 and 930, and cases there cited: Freeman on Judgments, 5th Ed., Sec. 693.

■ Applying these principles, what were the "matters in issue" in No. 3127 Law? The rule to be followed in answering this question was thus stated in Bates. v. Bodie, 245 U.S. 520, 38 S.Ct. 182, 62 L.Ed. 444, L.R.A.1918C, 355, at page 526 of 245 U.S., at page 184 of 38 S.Ct., 62 L.Ed. 444, L.R.A.1918C, 355: "But how find the matters in issue or the points controverted upon the determination of which the judgment was rendered? The obvious answer would seem to be that for the issues we must go to the pleadings; for the response to them and their determination, to the judgment; and each may furnish a definition of the other."

In United States Fidelity & Guaranty Company v. McCarthy, 8 Cir., 33 F.2d 7, 10, certiorari denied 284 U.S. 652, 52 S.Ct. 32, 76 L.Ed. 553, the court said: "The matters in issue, which are concluded by the judgment, are the ultimate facts as developed by the pleadings and the evidence. From Smith v. Town of Ontario, C.C., 4 F. 386, 390, 18 Blatchf. 454, 457, we quote on this subject: 'The matter in issue has,

been defined in a case of leading authority as "that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleading." King v. Chase, 15 N.H. 9, 41 Am.Dec. 675. The issues presented by the pleadings may be modified by the proceedings upon the trial, as where a defense is withdrawn from consideration, or where a count in declaration is abandoned. However this may be, the matter in issue or the point in controversy is that ultimate fact or state of facts in dispute on which the verdict or finding is predicated.' This case, together with King v. Chase, 15 N.H. 9, 41 Am.Dec. 675, is referred to with apparent approval in Reynolds v. Stockton, 140 U.S. 254, 270, 11 S.Ct. 773, 35 L.Ed. 464."

■ Under the foregoing rules, the matters in issue as ultimate facts in No. 3127 Law, in so far as the same are now relevant, necessarily included the questions of whether the veteran was insane by reason of mental diseases contracted while in military service between May 11, 1918, and the date of his discharge in July of 1919, and whether this insanity had continued from the time of such military service up to the date when the converted term insurance policy matured, and rendered the veteran totally and permanently disabled. These are questions which were actually litigated and judicially determined as ultimate and vital facts in that action. Since the government there litigated and "fought out" these questions before a court of competent jurisdiction, which necessarily passed upon such questions in rendering a judgment, now final, the government is now estopped by that judgment from collaterally disputing or denying these facts, or their effect, in the instant case.

■ The government, by consenting to an action on the policy of war risk or converted term insurance, placed itself in the same position as a private litigant with respect to the application of the doctrine of estoppel by judgment. Edmunds v. United States, D.C.Or., 24 F.Supp. 742, appeal dismissed 101 F.2d 1021; see also 34 C.J., Title "Judgments", Section 1477, and cases there cited in footnote 58.

■ Having been so adjudged insane, the veteran's acts in reenlisting in and subsequently deserting from the army were the acts of an irresponsible person, and no claim or right to recover may now grow out of those facts upon which the government is now seeking to base its claim. Consequently, the government cannot prevail in this case.

Three counterclaims have been interposed in the defendants' answer. The first is for compensation payments.

■ It is alleged that the proper Boards of the Bureau of War Risk Insurance and its successors have held that the defendant Cathcard is suffering from a service connected disability, and that, under the ratings and awards of these Boards, such defendant is entitled to compensation in the amount of $50 per month since November 30, 1928. Section 11a—2, of Title 38, of the United States Code Annotated, provides: "11a—2. Finality of Administrator's decisions on questions concerning claims for benefits or payments. Notwithstanding any other provisions of law, except as provided in section 445 of this title, as amended, (concerning actions on contracts of war risk insurance) and in section 817 of this title, (concerning suits in the event of disagreement as to claims arising under the chapter on National Service Life Insurance) the decisions of the Administrator of Veterans' Affairs on any question of law or fact concerning a claim for benefits or payments under any Act administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decisions. Oct. 17, 1940, c. 893, § 11, 54 Stat. 1197." In view of this statute, the court is without jurisdiction of the subject matter of the first counterclaim. Van Horne v. Hines, 74 App.D.C. 214, 122 F.2d 207, certiorari denied 314 U.S. 689, 62 S.Ct. 360, 86 L.Ed. 552.

Relief to the defendants on this counterclaim will be denied.

The second counterclaim is for monthly installments in the amount of $37.18 per month claimed to have accrued since June

27, 1936, by reason of the provisions of the policy of converted term insurance, and by reason of the judgment in case No. 3127 Law.

It is alleged that the government, although having paid the amount of the judgment, has not paid the installments which have become due since the above date, and that: "the Administrator of Veterans' Affairs has not made a finding that the said James S. Cathcard has recovered his ability to continuously follow a substantial gainful occupation".

■ The existence of a disagreement between the veteran and the government is a condition precedent to the exercise of jurisdiction in actions for war risk insurance, 38 U.S.C.A. § 445; Eidam v. United States, 8 Cir., 74 F.2d 350; United States v. Kiles, 8 Cir., 70 F.2d 880.

■ Since it does not clearly appear from the allegations of the second counterclaim that there is a presently existing disagreement between the veteran and the Veterans' Administration, relief on this counterclaim will be denied and the defendants will be left to resort to mandamus or other appropriate remedy for the recovery of the installments in question.

The third counterclaim is for interest at the rate of six per cent per annum from July 8; 1936, on the amount of the judgment in No. 3127 Law.

■ The United States will not be required to pay interest except where liability therefor is imposed by statute or assumed by contract. Seaboard Air Lines Railway Company v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664. Interest may not be recovered against the United States upon unpaid monthly installments from the date on which they have become due under a policy of war risk insurance. United States v. Worley, 281 U. S. 339, 50 S.Ct. 291, 74 L.Ed. 887. Nor may interest be awarded against the United States on a judgment for such installments. Jackson v. United States, 281 U.S. 344, 50 S.Ct. 294, 74 L.Ed. 891. See also United States v. Jackson, 10 Cir., 34 F.2d 241, 73 A.L.R. 316. The same rules apply with respect to converted war risk policies. See United States v. Martin, 8 Cir., 42 F.2d 202.

Consequently, the defendants are not entitled to relief on the third counterclaim.

## Conclusions of Law

1. The judgment and adjudication of insanity in case No. 3127 Law, having been unappealed and having become final, is a bar to recovery by the United States in the instant action.

Since the defendant, James S. Cathcard, was insane at the time of his reenlistment, his acts in reenlisting in and deserting from the army were the acts of an incompetent and, as such, cannot be the basis of any recovery by the United States.

2. The court is without jurisdiction of the subject matter of the first counterclaim, which seeks a judgment against the United States for accumulated monthly installments of compensation.

3. There being an insufficient showing and allegations of a presently existing disagreement between the defendant, James S. Cathcard, and the Veterans' Administration with respect to the claims set forth in the second counterclaim for monthly installments of insurance alleged to have accumulated since the judgment in case No. 3127 Law, the court is without jurisdiction over the subject matter of the second counterclaim.

4. There being no liability on the part of the United States for the payment of interest unless expressly provided for by statute or assumed by contract, the United States is not liable for the payment of interest on the judgment in case No. 3127 Law.

In keeping with these Findings and Conclusions, judgment is this day being entered dismissing the action of the plaintiff and the three separate counterclaims of the defendants.